176 So.2d 574 (1965)
The SMALLEYLOGICS CORPORATION, Appellant,
v.
DADE COUNTY, a political subdivision of the State of Florida, Appellee.
No. 64-943.
District Court of Appeal of Florida. Third District.
June 15, 1965.
Rehearing Denied July 23, 1965.
*575 Mershon, Sawyer, Johnston, Dunwody, Mehrtens & Cole and Wallace I. Garrick, Miami, for appellant.
Thomas C. Britton, County Atty., and St. Julien P. Rosemond, Asst. County Atty., for appellee.
Before TILLMAN PEARSON, HENDRY and SWANN, JJ.
TILLMAN PEARSON, Judge.
The appellant, The Smalleylogics Corporation, filed its complaint against the appellee, Dade County. The complaint was on the equity side of the court and prayed for a decree adjudging certain resolutions of the Zoning Appeals Board and the Board of County Commissioners of Dade County, to be void and unconstitutional. It was alleged that the resolutions unreasonably and unlawfully attempted to nullify a previous non-conforming zoning use applicable to property of the plaintiff. Specifically, the purpose of the complaint was set forth in a prayer that the circuit court issue a permanent injunction against the officials and agents of Dade County retraining them from interfering with the operation of the non-conforming use. In this connection it was alleged that the County threatened to terminate appellant's non-conforming use by a resolution passed by the Board of County Commissioners.
The appellee County filed a motion to dismiss the complaint on the following grounds:
"1. The complaint fails to state a cause of action upon which relief may be granted.
"2. The complaint fails to join indispensable party or parties.
"3. Plaintiff has misconceived his remedy, if any he has."
The motion to dismiss was denied. Thereafter answer was filed setting forth affirmative defenses, and an extended trial of the issues was had.
At the conclusion of the trial and after further argument, the trial court entered the order which is here appealed. The preamble of the order reads as follows:
"THIS CAUSE having come on to be heard for final hearing and the Court, after trial in this cause, having reconsidered the defendant's Motion to Dismiss and being of the opinion that the same is well taken and that *576 the Court should have granted said motion * * *." [Emphasis supplied]
Thereupon the court dismissed the complaint with prejudice to the plaintiff. The plaintiff brought this appeal and we affirm the decree.
The parties to this appeal agree (and it is apparent from comments of the trial judge which are contained in the record) that the basis for the trial judge's order dismissing the complaint was his conclusion that the plaintiff had misconceived its remedy. We are doubtful that the order of dismissal could be sustained upon this ground. Nevertheless, we proceed to other matters presented on this appeal because of the often expressed principle that the order of a trial judge will be sustained on appellate review if it is correct, even though upon a ground other than that given by the trial judge.
We think that the order appealed must be considered an order on the pleadings and as such, the record before us consists only of the complaint, the motion to dismiss and the order appealed. The motion to dismiss contained, as above pointed out, the ground that the complaint failed to state a cause of action. It is upon this ground that the complaint was properly dismissed.
The complaint and the exhibits attached thereto set out a history of Dade County Zoning as related to the 39 acres of land owned by appellant. This land has on it a private airport for small planes now known as "Aero Country Club" and formerly known as "Browns Airport". The facts alleged may be summarized as follows. There are two plots of land involved. The first is 30 acres, and the second is 9 acres, in extent. The 30 acre tract has been uninterruptibly used as an airport for the past 30 years. It was used as an airport prior to the establishment of zoning in Dade County and therefore constituted, after the adoption of the zoning, an existing or non-conforming use. The second parcel of 9 acres was at the time of the adoption of Dade County zoning being used for agricultural purposes. This use was in conformity with the plan adopted by the County.
In 1954 appellant's predecessor in ownership made application to the Board of County Commissioners of Dade County for a special variance permit to allow him to enlarge the airport by using the additional nine acres for airport purposes. It was only by procuring such a variance that the then owner could expand his airport operation. In his application for the variance (which is attached as an exhibit to the complaint) the then owner certified that the granting of his application was necessary in order to eliminate a danger in the operation of the airport. Later an amendment to the application for zoning variance was filed. (This amendment is also attached to the complaint.) In the amendment the owner specified that: (1) the operation of the airport would be such that only aircraft with power ratings of less than 600 horsepower would ordinarily use the airport; (2) no new buildings would be constructed without a special permit; (3) the property subject to the zoning variance would not be used to train government contract students.
Upon this application the County Commission passed the resolution which is the basis of this appeal. The resolution granted the variance as to the nine acres and continued the non-conforming use on the 30 acres upon certain conditions.[1] One of *577 the conditions was that night flying would be strictly prohibited.
On August 9, 1963, the Director of the Dade County Planning, Zoning and Building Department filed an application requesting that the Aero Country Club be required to show cause before the Zoning Appeals Board why Resolution 8452 should not be cancelled because of a violation of the conditions imposed in Resolution 8452. The application was based upon the following charges:
"1. Failure to discontinue night flying at the airport;
"2. Permitting night flying at the airport; and
"3. Failure to maintain the operation of the airport in accordance with the terms and conditions of Resolution 8452 * * *."
On September 17, 1963, pursuant to notice and following hearing, the Zoning Appeals Board adopted Resolution 2-ZAB-486-63, declaring that the special permit authorizing the airport use and Resolution 8452, be amended so that no certificate of use and occupancy should be issued for any airport operation after October 17, 1964. It also interpreted night flying to mean flying between the hours of sunset and sunrise and required that a full time night watchman be employed. The resolution of the Zoning Appeals Board was appealed by the Zoning Director and certain residents to the Board of County Commissioners. After public hearing, the Board of County Commissioners adopted Resolution Z-160-64, overruling the decision of the Zoning Appeals Board and directing that all permits authorizing an airport use on any and all portions of the airport, including the total 39 acres, be cancelled immediately. By a subsequent resolution the appellant was given until August 1st, 1964, to "phase out" its operation.
The gist of plaintiff's complaint is that it has a substantial vested property right in the non-conforming use for the 30 acre tract and that therefore the action of the Board of County Commissioners can only legally apply to the nine acre tract.
*578 We hold that this position is untenable on the bill of complaint and the exhibits attached thereto. The conditions of the 1955 resolution clearly show that they are not confined to the nine acres but apply to the entire airport. For example, the condition as to night flying applied to the whole airport, not merely to the nine acres. Appellant's predecessor had a non-conforming use which he converted into a conditional non-conforming use or variance in order to expand his operation. Having used the airport as expanded subject to the conditions, he cannot now claim that he can violate the conditions without forfeiting his right to the conditional non-conforming use. Cf., Edmonds v. Los Angeles County, 40 Cal.2d 642, 255 P.2d 772; State v. Farmland-Fair Lawn Dairies, Inc., 70 N.J. Super. 19, 174 A.2d 598.
Having determined that the complaint was properly dismissed because it failed to state a cause of action we need not consider appellant's second point. We do not consider appellee's cross assignment of error directed to a post decretal order because the cross assignment could have no effect except for affirmance on this appeal.
Affirmed.
NOTES
[1] Resolution No. 8452 provides in part as follows:

"NOW THEREFORE BE IT RESOLVED by the Board of County Commissioners, Dade County, Florida, that the requested expansion of the airport be approved under the following conditions:
"1. That there shall be no change or addition to existing facilities, such as buildings, hangars, uses, etc., on the airport.
"2. That there shall be no change in the grass type runway except that the same shall be expanded into the ten-acre parcel.
"3. That the use of the airport shall be restricted to private and executive type passenger aircraft with a total horsepower rating for each aircraft of less than 600 horsepower, which, among other things, would specifically prohibit DC-3, C-47 and other similar type of aircraft.
"4. That air freight shipments of all types shall be strictly prohibited.
"5. Night flight shall be strictly prohibited.
"6. That the airport shall not be used to train government contract students. That Howe Flying Service has indicated it is in the process of taking steps to secure additional space and facilities on Tamiami Airport so that in the event the national emergency is such that government contract flying is required for defense purposes, the Howe Flying Service will be in a position to utilize Tamiami Airport as its base of operation.
"7. That the airport operators shall inform the Civil Aeronautics Administration to note the prohibition of 600 horsepower aircraft using the airport in the AIRMEN'S GUIDE.
"8. That the airport shall be marked in a method and fashion meeting with the satisfaction of the Zoning Director to indicate the limitation as to the horsepower rating of planes that can use the airport.
"9. That a plot use plan be submitted to meet with the approval of the Zoning Director, indicating existing facilities, etc., location of runways, airport markings, and such other data as may be required to indicate the extent and type of operation of the airport.
"10. That the use be established and maintained in accordance with the approved plan and terms and conditions of this resolution.
"11. That a special permit be issued for the airport upon compliance with all terms and conditions of this resolution and the same be renewable annually so long as the terms and conditions of this resolution are complied with, and be subject to cancellation for any violation thereof."