[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
11/15/99
THOMAS  K. KAHN
CLERK

No. 97-5654

D.C. Docket No. 94-2031-CV-EBD

AGRIPOST, INC., a Florida Corporation,
AGRI-DADE, LTD., a Florida Limited Partnership,

Plaintiffs-Appellees,

versus

MIAMI-DADE COUNTY, through its
Manager and Board of County Commissioners,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Florida

**(November 15, 1999)**

Before TJOFLAT and EDMONDSON, Circuit Judges, and KRAVITCH, Senior Circuit Judge.

TJOFLAT, Circuit Judge:

In 1987, the Board of Commissioners of Dade County, Florida, granted Agripost, Inc. an unusual use zoning permit for the construction and operation of a waste disposal facility. In 1991, the Dade County Zoning Appeals Board revoked the permit. After an appellate panel of the Dade County Circuit Court affirmed the revocation, and the Florida District Court of Appeal declined review, Agripost brought this suit against Dade County, claiming that the revocation constituted a taking without just compensation, in violation of the Fifth and Fourteenth Amendments.[1] The district court dismissed Agripost's takings claim as unripe because Agripost had failed to pursue Florida's inverse-condemnation remedy. The County now appeals,[2] contending that the district court should have dismissed Agripost's takings claim under the Rooker-Feldman doctrine[3] for want of subject matter jurisdiction, or, alternatively, granted it summary judgment on the ground that

---

[1] Agripost's complaint contained several other claims based on the revocation of Agripost's permit. In its order dismissing Agripost's taking claim as unripe, the district court concluded that Agripost's other claims were legally insufficient and directed the entry of final judgment in the County's favor on all claims. With the exception of an equal protection claim, which we address in note 9 infra, none of these other claims are before us or are germane to this appeal.

[2] See infra part II.

[3] The Rooker-Feldman doctrine derives from District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983), and Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923), and reserves to the United States Supreme Court the authority to review final decisions from a state's highest court. See also infra, note 6.

2

principles of res judicata and collateral estoppel barred the claim. We agree with the district court that Agripost's takings claim was unripe. We therefore affirm its dismissal of the suit.

I.

In 1986, Dade County's Board of Commissioners (the "Board") sought proposals for the construction and operation of a waste disposal plant that would create an environmentally safe, useful end product from the county's solid waste. Agripost submitted a proposal, which the Board subsequently accepted. Agripost then leased a site for its facility.[4] Because the site was zoned for agricultural use, Agripost needed to obtain from the Board an unusual use zoning permit before it could construct and operate the plant. Agripost therefore applied for such a permit. On March 5, 1987, the Board approved Agripost's application, but made its approval subject to several conditions. One condition required Agripost to operate its facility in accordance with the plot use plan to be devised by Agripost and approved by the County's Zoning Director. Another required Agripost to comply

---

[4] Agripost's plant would convert garbage to agricultural fertilizer by grinding the garbage into small particles and then applying chemicals that enhanced the natural decay of the resulting waste. The site that Agripost selected for this facility abutted Dade County's landfill and was near the County's transfer station from which waste was distributed to disposal facilities. Unfortunately, the site was located in a residential neighborhood and was adjacent to an 800-student elementary school.

with all "conditions and requirements"of Dade County's Department of Environmental Resource Management ("DERM"),[5] which included specific requirements for the storage of waste products, and that the facility not cause a nuisance.[6]

Agripost's facility began operating in the fall of 1989, and soon thereafter, area residents began complaining that finely ground waste particles were emanating from the plant and that a vile stench covered the area. According to officials from an adjacent elementary school, a "black, thick glue-like mold" was covering nearly every surface of the school, and students and teachers alike were developing various illnesses.

In October 1990, DERM informed Agripost that its facility was creating a nuisance; DERM alleged both that noxious odors were emanating from the plant, and that Agripost was storing waste products in a manner contrary to the conditions of its permit and in a location other than that prescribed by the plot use

---

[5] DERM reviewed Agripost's permit application and issued a memorandum detailing a list of requirements that were in turn incorporated as conditions in the Board's resolution authorizing the unusual use zoning permit.

[6] On July 7, 1987, Agripost and Dade County signed an agreement for the construction and operation of the facility (the "Agreement"). The Agreement set out the amount of waste that the County would deliver per week to Agripost and the compensation that Agripost would receive for disposing of the waste. The Agreement also incorporated the conditions that the Board had placed on its approval of the unusual use zoning permit.

4

plan. The County's Building and Zoning Department ("B&Z") then initiated procedures to revoke Agripost's unusual use zoning permit; B&Z issued zoning violation notices that alleged that Agripost had breached the conditions of its permit, and requested a hearing before the Zoning Appeals Board ("ZAB") to determine whether the permit should be revoked. After a hearing on January 16, 1991, the ZAB concluded that Agripost had failed to comply with the conditions of its unusual use permit, and therefore revoked it. The Board affirmed the ZAB's decision.

Having exhausted its administrative remedies, Agripost appealed the Board's decision to a three-judge panel of the appellate division of the Dade County Circuit Court (the "Circuit Court"). After reviewing the administrative record, the court concluded that Agripost had failed to comply with the conditions of its permit; the court therefore affirmed the revocation of Agripost's permit. The Florida District Court of Appeal thereafter denied Agripost's petition for certiorari review. See Agri-Dade, Ltd. v. Metropolitan Dade County, 605 So. 2d 1272 (Fla. 3d DCA 1992).

On September 29, 1994, Agripost brought the present lawsuit against Dade County in the United States District Court for the Southern District of Florida. Agripost claimed that by revoking the permit, the Board, and therefore Dade

County, deprived it of all economically viable use of its leasehold interest, of its facility, and of its rights under the Agreement. Because the County had not provided just compensation, Agripost contended, the permit revocation constituted a taking in violation of the Fifth and Fourteenth Amendments.

In response, Dade County, citing the Rooker-Feldman doctrine, which reserves to the United States Supreme Court the authority to review final decisions from a state's highest court, moved the district court to dismiss Agripost's takings claim for lack of subject matter jurisdiction. According to the County, the Circuit Court decided Agripost's takings claim in affirming the revocation of Agripost's permit. The County moved alternatively for summary judgment on the grounds of res judicata and collateral estoppel. It contended that (1) res judicata barred the takings claim because the claim was either litigated or should have been litigated in the Circuit Court proceeding, and (2) collateral estoppel barred the takings claim because a factual issue essential to the takings claim was resolved against Agripost in the Circuit Court.[7]

---

[7] Although res judicata, collateral estoppel, and Rooker Feldman are separate doctrines, they have a "close affinity" to one another. Valenti v. Mitchell, 962 F.2d 288, 297 (3d Cir. 1992). In considering whether to give preclusive effect to state court judgments, federal courts must apply the State's law of collateral estoppel. See Vasquez v. Metropolitan Dade County, 968 F.2d 1101, 1106 (11th Cir. 1992). Under res judicata, a final judgment "bars a subsequent suit between the same parties based upon the same cause of action and is conclusive as to all matters germane thereto that

The district court, on its own initiative and over Dade County's objection, dismissed as unripe Agripost's takings claim, because Agripost had failed to pursue the inverse-condemnation remedy that Florida provided to property owners who, like Agripost, alleged that an administrative decision rendered their property worthless. In the district court's view, the Supreme Court's decision in Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172, 194-97, 105 S. Ct. 3108, 3120-22, 87 L. Ed. 2d 126 (1985), required Agripost to pursue that remedy before it could make a Fifth Amendment takings claim.[8]

---

were or could have been raised." Hoechst Celanese Corp. v. Fry, 693 So. 2d 1003, 1006 n.9 (Fla. 3d DCA 1997). Collateral estoppel bars identical parties from relitigating issues that were actually adjudicated in a prior proceeding. See Florida Dep't of Revenue v. Ferguson, 673 So. 2d 920, 922 (Fla. 2d DCA 1996). Under the Rooker-Feldman doctrine only the United States Supreme Court has the authority to review a final state court judgment that unambiguously disposes of a federal constitutional claim. See Dale v. Moore, 121 F.3d 624, 626 (11th Cir. 1997). The doctrine not only bars review of claims that were actually litigated in state court, but also bars those that are "inextricably intertwined" with the state court judgment. Feldman, 460 U.S. at 482 n.16, 103 S. Ct. at 1315 n.16. A federal claim is intertwined with the state court judgment "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." Pennzoil Co. v. Texaco, Inc. 481 U.S. 1, 25, 107 S. Ct. 1519, 1533, 95 L. Ed. 2d 1 (1987) (Marshall, J., concurring).

[8] In Williamson, the Supreme Court noted that "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." Williamson, 473 U.S. at 194, 105 S. Ct. at 3120. Thus, the Court concluded, if the state has established a process for obtaining compensation, the property owner cannot prosecute a takings claim under the Fifth and Fourteenth Amendments unless he alleges that the state process is inadequate.

In deciding that Agripost's takings claim was not ripe, the district court addressed the questions whether it should dismiss the claim for want of subject matter jurisdiction under the Rooker-Feldman doctrine or, instead, entertain the claim on the merits and reject it on grounds of res judicata and collateral estoppel. Citing an exception to the Rooker-Feldman doctrine, the court concluded without elaboration that that doctrine did not apply because Agripost "did not have a reasonable opportunity to raise [its claim for compensation] before the Circuit Court." Similarly, the district court stated that res judicata and collateral estoppel did not apply because Agripost's appeal of the permit revocation to the Circuit Court did not include a separate cause of action for inverse condemnation.[9]

Although Dade County prevailed in the district court, it is Dade County, not Agripost, that now appeals the district court's judgment. Dade County asks that we affirm the district court's dismissal of Agripost's takings claim, but that we do so on grounds that the district court rejected – namely, that the claim is barred by the Rooker-Feldman doctrine, res judicata, and collateral estoppel. We conclude that the district court correctly determined that Agripost's takings claim was unripe. We therefore affirm its dismissal of the claim.

_____

[9] In reaching this conclusion, the district court effectively denied the County's motion for summary judgment based on the affirmative defenses of res judicata and collateral estoppel.

II.

As a threshold matter, we must determine whether Dade County has standing to appeal the district court's judgment. Because the district court dismissed Agripost's suit, the County was the prevailing party below. Ordinarily, the prevailing party does not have standing to appeal because it is assumed that the judgment has caused that party no injury. See Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 333, 100 S. Ct. 1166, 1171, 63 L. Ed. 2d 427 (1980); Ashley v. Boehringer Ingelheim Pharms. (In re DES Litigation), 7 F.3d 20, 23 (2d Cir. 1993). An exception to this rule exists, however, when the prevailing party is prejudiced by the collateral estoppel effect of the district court's order. In such a case, the litigant has been aggrieved by the judgment and has standing to appeal. See Ashley, 7 F.3d at 23.

This exception applies in the present case. Here, although the district court ultimately dismissed Agripost's takings claim, it first considered – and rejected – Dade County's res judicata and collateral estoppel defenses. Unless it is set aside, the court's ruling regarding those defenses will have a preclusive effect in pending litigation that is likely to prejudice Dade County. Following the district court's ruling that Agripost's takings claim had not been litigated in the Circuit Court and

9

therefore was unripe, Agripost brought a takings claim in state court.[10]  Because the district court rejected the County's collateral estoppel and res judicata defenses, the County will be precluded from raising those same defenses in the state court proceeding.[11]  In other words, the County would be precluded from arguing that Agripost had already raised and lost its takings claim.  Thus, Dade County has standing to appeal the district court's judgment.[12]

---

[10] The state court proceeding has been stayed pending the outcome of this appeal.

[11] In this case, the Florida court would look to federal claim preclusion law in determining whether to give the former federal judgment preclusive effect.  See Andujar v. National Property and Cas. Underwriters, 659 So. 2d 1214, 1216 (Fla. 4th DCA 1995) ("We agree with defendant to the extent that federal claim preclusion law governs, rather than Florida's. Whenever res judicata is asserted, the court in the second forum is bound to give the former judgment the same preclusive effect that the rendering court would give it.").  A district court's ruling has a preclusive (collateral estoppel) effect on subsequent litigation only if "(1) the issue [is] identical in both the prior and current action; (2) the issue was actually litigated; (3) the determination of the issue was critical and necessary to the judgment in the prior action; and (4) the burden of persuasion in the subsequent action [is not] significantly heavier."  SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998).  The district court's resolution of Dade County's res judicata and collateral estoppel defenses satisfies these criteria. First, because the takings claim that Agripost has filed in state court is identical to the one presently before us, the question whether res judicata and collateral estoppel bar the claim is also identical.  Second, these two defenses were clearly litigated in the district court. Third, the district court's ruling regarding those defenses was necessary to its judgment; the essence of the defenses is that Agripost's takings claim had already been litigated in the Circuit Court, and the resolution of that issue was necessary to the district court's ruling that the takings claim was unripe.  Fourth, the burden of persuasion in the pending state court action is no heavier than the burden that existed in the district court.  Thus, unless it is set aside, the district court's ruling will preclude Dade County from relitigating those defenses.

[12] In addition to the takings claim, Agripost's complaint raised a claim under the Fourteenth Amendment's Equal Protection Clause.  The district court dismissed this claim for failure to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  Although Dade County appeals the district court's dismissal of that claim on the ground that the court instead should have dismissed it under the doctrines of res judicata, collateral estoppel, and Rooker-Feldman, we

10

III.

Before we address the County's alternative arguments that the district court should have either (1) dismissed Agripost's takings claim for want of subject matter jurisdiction, as required by the Rooker-Feldman doctrine, or (2) entertained the claim on the merits and granted summary judgment on the ground that the claim was barred by principles of res judicata or collateral estoppel, we think it necessary to recall what a property owner must allege in order to state a claim that a local entity has effected a regulatory taking of his property without just compensation in violation of the Fifth Amendment.

First, the property owner must allege that the governmental action – here, the revocation of a permit to operate a waste disposal plant – has "denie[d] all economically beneficial or productive use of" his property. Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1015, 112 S. Ct. 2886, 2893, 120 L. Ed. 2d (1992). In other words, the governmental action must have made the property worthless.

Second, the property owner must allege either that the state law provides him no process for obtaining just compensation (such as an action for inverse

conclude that the County has not been aggrieved by the district court's disposition of this claim. The district court's judgment prevents Agripost from relitigating its equal protection claim in another proceeding; consequently, there is no collateral estoppel effect that could be prejudicial to the County. We therefore make no further mention of Agripost's equal protection claim.

11

condemnation) or that the state law appears to provide such process, but due to state court interpretation, the process is inadequate.[13]  If the property owner makes either allegation, then his Fifth Amendment takings claim is ripe.  If, on the other hand, he makes neither allegation (and cannot do so because the state law affords an adequate process for obtaining just compensation), his Fifth Amendment takings claim is not ripe.  If such a claim is pending in federal district court, the district court must dismiss it for lack of subject matter jurisdiction since the owner has failed to establish an Article III "case or controversy."  See Reahard v. Lee County, 30 F.3d 1412, 1417 (11th Cir. 1994) ("It follows that '[a]s a practical matter, Williamson precludes litigation of the merits of a just compensation claim in federal court unless the state declines to provide adequate procedures through which an aggrieved party might seek compensation.' ") (quoting New Port Largo, Inc. v. Monroe County, 985 F.2d 1488, 1496 (11th Cir. 1993) (Tjoflat, C.J., specially concurring)).  With the foregoing principles in mind, we turn to Dade County's argument that Agripost's Fifth Amendment takings claim was actually

---

[13] An example of how a state law – adequate on its face – could provide an inadequate remedy because of a state court's (the trial court's and/or the appellate court's) interpretation would be if the state law provided an inverse condemnation action to remedy a taking, but the state court interpreted the law as capping the property owner's damages at less than the value of what was taken.  In such a case, the state court's interpretation of the law would render the remedy inadequate to provide "just compensation" within the meaning of the Fifth Amendment.

litigated in the Circuit Court (and decided against Agripost)[14] and, therefore, that

the Rooker-Feldman doctrine required the district court to dismiss the claim for

want of subject matter jurisdiction.

If Agripost's Fifth Amendment takings claim was actually litigated and

decided against Agripost in the Circuit Court, the Circuit Court's decision must

have come after that court affirmed the County's revocation of Agripost's permit.

That is because without the revocation of the permit, Agripost could not have

claimed that the County's action denied Agripost all economically beneficial or

productive use of its property. At that point, Agripost had to have filed a pleading

(with the Circuit Court) alleging the following:

> The Circuit Court's decision affirming the County's revocation of the
> permit effectively rendered Agripost's property (its leasehold, its
> plant, and its rights under the Agreement) worthless; Florida law
> provides no adequate procedure, such as an action for inverse
> condemnation, for obtaining just compensation; because Florida law
> is deficient in this respect, Agripost has a ripe Fifth Amendment
> takings claim, and is entitled to just compensation.

The Circuit Court thereafter would have had to acknowledge Agripost's

pleading, entertain Agripost's takings claim on the merits, and deny relief. The

---

[14] State courts of general jurisdiction, such as the Dade County Circuit Court, have the authority, if not a duty, to entertain the federal constitutional claims presented to them. Whether the three-judge Circuit Court that decided Agripost's appeal of the permit revocation would have had jurisdiction to consider Agripost's takings claim is problematic, as we point out in the text infra.

13

court would have denied relief because it found that the property had not been rendered worthless.

We conclude that the Circuit Court did not acknowledge, and therefore did not litigate, Agripost's takings claim for two reasons. First, the record is devoid of any indication that Agripost presented such a claim to the Circuit Court after the court affirmed the Board's revocation of Agripost's permit.[15] Specifically, we find no allegation by Agripost to the effect that its property had been rendered worthless and that Florida provided no adequate process for obtaining just compensation. Nor is there any indication that the Circuit Court noticed a takings claim on its own initiative and, having done so, rejected it as legally insufficient.

Second, the Circuit Court lacked the authority to determine the takings issue. The Circuit Court's task was limited to one question: whether the Board's revocation of Agripost's permit was justified. The court was not called upon to determine whether there had been a Fifth Amendment taking. A Fifth Amendment takings claim could not have materialized until the Circuit Court passed on the propriety of the Board's revocation of Agripost's permit. See Lake Lucerne Civic Ass'n Inc., v. Dolphin Stadium Corp., 878 F.2d 1360, 1370 (11th Cir. 1989) ("The

---

[15] Nor is there any indication that Agripost presented the Circuit Court with a Fifth Amendment takings claim prior to the court's decision affirming the revocation of Agripost's permit.

14

point is that the propriety of the agency action must be finally determined before a claim for inverse condemnation exists.") (quoting Albrecht v. State, 444 So. 2d 8, 12 (Fla. 1984)). Only after the Circuit Court affirmed the Board's decision and the Florida District Court of Appeal denied Agripost certiorari review could Agripost have claimed that the revocation of the permit rendered its property worthless.[16] See id. In sum, the takings issue was not – nor could it have been – entertained by the Circuit Court in its appellate review of the Board's action on Agripost's permit. Consequently, the Rooker-Feldman doctrine did not require the district court to dismiss Agripost's takings claim.

We next turn to Dade County's claim that the district court should have granted it summary judgment on the ground that res judicata barred Agripost's claim. Res judicata bars a subsequent suit between the same parties based on the same cause of action. It applies to (1) all matters that were actually raised, and (2) all matters that could have been raised in the prior suit. See Hoechst Celanese Corp., 693 So. 2d at 1006 n.9; ICC Chem. Corp. v. Freeman, 640 So. 2d 92, 93 (Fla. 3d DCA 1994). The County claims that res judicata barred the takings claim

---

[16] The allegation that the property had become worthless could not be made until the revocation of the permit became effective; that is, when the Circuit Court affirmed the Board's decision and the Florida District Court of Appeal denied Agripost's petition for certiorari on September 21, 1992. See Agri-Dade, 605 So. 2d at 1272.

15

because Agripost actually raised (and the Circuit Court actually adjudicated) that claim; alternatively, Dade County contends that res judicata applied because Agripost had an opportunity to present that claim to the Circuit Court.

Unfortunately for Dade County, our conclusion that the Rooker-Feldman doctrine is inapplicable forecloses the County's res judicata defense. First, as we have observed, the Circuit Court did not adjudicate a takings claim, because Agripost did not present one to the court. Second, Agripost did not have an opportunity to present the claim; it could not have done so until judicial review (of the Board's action) in the Circuit Court and in the Florida District Court of Appeal had run its course.

Finally, we consider Dade County's contention that the takings claim was barred by collateral estoppel. The County asserts that the district court should have granted it summary judgment on the basis of that defense because the Circuit Court, in reviewing the permit revocation, found that the Board's action had not rendered Agripost's property worthless. The necessary result of this finding, the County contends, is that Agripost's Fifth Amendment takings claim fails as a matter of law. The County's argument proceeds as follows.

In First English Evangelical Lutheran Church v. County of Los Angeles, 482 U.S. 304, 321, 107 S. Ct. 2378, 2389, 9 L. Ed. 2d 250 (1987), the Supreme Court

16

recognized that state courts have the power to strike down zoning actions that are confiscatory, thereby subjecting the local government to liability for a temporary taking only. In Florida, a zoning ordinance that effectively confiscates property is void. See Dade County v. National Bulk Carriers Inc., 450 So. 2d 213, 216 (Fla. 1984). According to the County, this rule also applies in a case involving the denial of a permit; thus, if the denial is confiscatory, it is void. Therefore, in reviewing the County's action in the instant case, the Circuit Court was required to set aside the Board's action if it was confiscatory.[17] Under the County's view of the law, because the Circuit Court affirmed the Board's action, it necessarily found that the action was not confiscatory –that is, Agripost was not deprived of all productive use of its property. Given this finding, Dade County contends, collateral estoppel precluded Agripost from establishing in the district court an indispensable element of its takings claim (that the Board's action rendered its property worthless), and the court should have granted the County summary judgment.

---

[17] In reviewing the propriety of the Board's revocation of Agripost's permit, the Circuit Court was required to determine "whether the essential requirements of the law have been observed." City of Deerfield Beach v. Vaillant, 419 So. 2d 624, 626 (Fla. 1982). The County contends that an essential requirement of the law was that the Board's action not be confiscatory.

Dade County's argument is correct in part; certain zoning actions are invalid under Florida law if they are confiscatory. What the County fails to recognize, however, is that this rule only applies to zoning ordinances, not to permit denials or revocations that constitute a proper exercise of the local government's police power. See Key Haven Associated Enters., Inc. v. Board of Trustees of the Internal Improvement Trust Fund, 427 So. 2d 153, 159 (Fla. 1982). In the proceeding before the Circuit Court, whether the Board's revocation of Agripost's permit effectively confiscated its property was irrelevant; the question before the court was whether the revocation was within the scope of the Board's police power. The court answered the question in favor of the County. Because the Circuit Court did not consider whether the Board's action would, if permitted to stand, effectively confiscate Agripost's property, the district court correctly held that collateral estoppel did not bar Agripost's Fifth Amendment takings claim.

IV.

At last, we turn to the question whether the district court properly dismissed Agripost's takings claim as unripe. We conclude that it did. Agripost failed to allege in the district court (as it failed to allege in the Circuit Court) either that Florida provided no process for obtaining just compensation or that the process it

18

provided was inadequate. Agripost's Fifth Amendment claim was not ripe for review; therefore, the district court properly dismissed it for want of subject matter jurisdiction.

AFFIRMED.