845 So.2d 918 (2003)
AGRIPOST, INC., a Florida corporation, and Agri-Dade, Ltd., a Florida limited partnership, Appellants,
v.
METROPOLITAN MIAMI-DADE COUNTY, through its Manager and Board of County Commissioners, Appellee.
No. 3D01-1898.
District Court of Appeal of Florida, Third District.
March 26, 2003.
Rehearing Denied May 28, 2003.
Orans, Elsen & Lupert; Josephs, Jack & Gaebe, Coral Gables, and Joseph W. Beasley, for appellants.
Holland & Knight and Daniel S. Pearson; Robert A. Ginsburg and Robert L. Krawcheck and James J. Allen, Miami, for appellee.
Before SCHWARTZ, C.J., and COPE and GODERICH, JJ.
COPE, J.
Agripost, Inc. and Agri-Dade, Ltd. appeal an adverse summary judgment in their suit against Miami-Dade County for inverse condemnation, breach of contract, and violation of section 403.7063, Florida Statutes (1989). We affirm.

*919 I.
In 1986, Miami-Dade County "sought proposals for the construction and operation of a waste disposal plant that would create an environmentally safe, useful end product from the County's solid waste. Agripost submitted a proposal, which the Board [of County Commissioners] subsequently accepted." Agripost, Inc. v. Miami-Dade County, 195 F.3d 1225, 1227 (11th Cir.1999).
In 1987, Agripost subleased a twenty-acre site from the Florida Department of Health and Rehabilitative Services for construction of the waste disposal plant. The site was near an elementary school and other public institutions.
Because the property was zoned for agricultural use, Agripost obtained a conditional, revocable unusual use zoning approval. There were a number of conditions, and the unusual use was revocable upon violation of the conditions. Among the conditions was the prohibition of any nuisance on the property. Agripost had made assurances that its process would prevent any odor problem associated with the facility.
Soon thereafter, the County entered into a contract with Agripost to supply garbage to the facility for processing. The County was to pay a fee to Agripost, called a "tipping" fee, per ton of garbage supplied. Under the contract, the County had no financial responsibility for the design, construction, or operation of the facility.
The contract provided that "[o]bjectionable odors should not be detected at the company's property limits as a result of the processing operation.... Continual generation of obnoxious odors, if not corrected within a reasonable time after written notice by the County, shall constitute a default by Agripost."
As summarized in an opinion in related litigation:
Agripost's facility began operating in the fall of 1989, and soon thereafter, area residents began complaining that finely ground waste particles were emanating from the plant and that a vile stench covered the area. According to officials from an adjacent elementary school, a "black, thick glue-like mold" was covering nearly every surface of the school, and students and teachers alike were developing various illnesses.
In October 1990, [the County Department of Environmental Resource Management ("DERM") ] informed Agripost that its facility was creating a nuisance; DERM alleged both that noxious odors were emanating from the plant, and that Agripost was storing waste products in a manner contrary to the conditions of its permit and in a location other than that prescribed by the plot use plan.
Agripost, 195 F.3d at 1228.
Agripost submitted a plan to the County to correct the cited problems. This involved modifications to the existing facility to improve odor control. The proposal included expansion of the site to include an adjacent thirty acres, to which some of the operations would be relocated.
The important point for present purposes is that Agripost proposed to pay for these changes by increasing the tipping fee that the County paid to Agripost.
In December 1990, Agripost's package of curative measures was presented to the County's Commission for approval. At that meeting, the Agripost president informed the County Commission that the plant would not continue to operate "if we don't pass the things that are before you today." After a public hearing, the County Commission voted to reject the Agripost modification proposal, and directed County officials to initiate proceedings before the Zoning Appeals Board to revoke Agripost's conditional zoning.
*920 In 1991, the Zoning Appeals Board concluded after a hearing that Agripost had violated the conditions of its unusual use permit, and revoked it. This ruling was affirmed by the County Commission as well as a three-judge panel of the Appellate Division of the Circuit Court. This court denied Agripost's petition for certiorari review without opinion. Agri-Dade, Ltd. v. Metropolitan Dade County, 605 So.2d 1272 (Fla. 3d DCA 1992). Agripost ceased operations.[1]
In 1994, Agripost brought an inverse condemnation suit against the County in the United States District Court for the Southern District of Florida. Agripost alleged that by revoking the unusual use zoning permit, the County deprived Agripost "of all economically viable use of its leasehold interests, of its facility, and of its rights under the Agreement." Agripost, 195 F.3d at 1228. "The district court dismissed Agripost's takings claim as unripe because Agripost had failed to pursue Florida's inverse-condemnation remedy." Id. at 1227. The United States Court of Appeals for the Eleventh Circuit affirmed. Id. at 1233-34.
In 1997, after the federal district court ruled, Agripost filed the instant action in state court. Agripost has alleged a claim under the Florida Constitution for inverse condemnation (count one); breach of contract (count two); and violation of section 403.7063, Florida Statutes (count three). In count four, Agripost states that it intends to reserve an inverse condemnation claim under the federal Constitution to be pursued in the federal court, should this lawsuit be unsuccessful. See Agripost, 195 F.3d at 1227, 1229-30, 1233-34; Fields v. Sarasota Manatee Airport Authority, 953 F.2d 1299, 1305-06 (11th Cir.1992).
The trial court entered summary judgment in favor of the County, and Agripost has appealed.

II.
In the context of a federal inverse condemnation claim, it has been said, "Generally, when a government entity acts to create property rights yet retains the power to alter those rights, the property right is not considered `private property,' and the exercise of the retained power is not considered a `taking' for Fifth Amendment purposes." Democratic Cent. Comm. v. Washington Metro. Area Transit Comm'n, 38 F.3d 603, 606 (D.C.Cir. 1994) (citations omitted); see also Smalleylogics Corp. v. Dade County, 176 So.2d 574, 578 (Fla. 3d DCA 1965). We follow that principle here in the context of the inverse condemnation claim under the Florida Constitution.
In the present case Agripost obtained an unusual use zoning approval which was conditional and revocable. The County brought revocation proceedings against Agripost for violation of the prescribed conditions. The Zoning Appeals Board revoked the unusual use zoning approval, and the revocation was upheld in the subsequent administrative and judicial review. Since the zoning approval was conditional and revocable, and Agripost violated the conditions, it follows that the revocation of the permit did not amount to a compensable taking for inverse condemnation purposes. Democratic Central Committee; see Smalleylogics.
Agripost argues, however, that under its contract with the County, it was entitled to a reasonable opportunity to cure the violation of the zoning conditions. Agripost correctly states that the contract had a *921 cure provision. Agripost contends that the County Commission was obligated to accept Agripost's proposal to solve the odor problem. Agripost argues that in rejecting the proposal, the County breached the contract. We disagree.
Agripost's proposal was not a straightforward plan to accomplish a cure at Agripost's expense. Instead, Agripost proposed to pay for the facility modifications by charging higher fees to the County than were called for under the existing contract.
In his oral presentation to the County Commission, the Agripost president indicated that Agripost would not continue to operate unless the County agreed to the package of proposed modifications. The County Commission was certainly within its rights in rejecting a proposal that in substance required the County to pay Agripost more money to cure the odor problem.[2]
It would present different issues if Agripost had simply requested forbearance by the County for a reasonable time so that Agripost could correct the facility problems at its own expense. That was not, however, Agripost's proposal. The trial court correctly rejected the breach of contract claim.
Agripost maintains that the County violated section 403.7063, Florida Statutes, which states in part that "no county or municipality shall adopt or enforce regulations that discriminate against privately owned solid waste management facilities because they are privately owned." Agripost argues that at the time relevant here, the County was paying a higher tipping fee at other facilities. Assuming that is so, there is no statutory violation. The statute does not provide a right to increase a contractually negotiated fee.
Affirmed.
NOTES
[1] Agripost filed for bankruptcy protection. The only asset of the bankruptcy estate is its claim against Miami-Dade County.
[2] Although we need not reach it, the County also argues that the Commission was well within its rights in rejecting the proposal to expand the facility by an additional thirty acres, given the already severe odor problems on the existing twenty.