[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 22, 2008
THOMAS K. KAHN
CLERK

_____

No. 05-16499

_____

D.C. Docket No. 04-21743-CV-JEM

AGRIPOST, LLC a Florida Limited Liability Company,
(successor by merger to Agripost, Inc.),
AGRI-DADE, LTD., a Florida limited partnership,

Plaintiffs-Appellants,

versus

MIAMI-DADE COUNTY, FLORIDA,
a political subdivision of the State of Florida,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(April 22, 2008)**

Before TJOFLAT, HULL and BOWMAN,* Circuit Judges.

_____

* Honorable Pasco M. Bowman II, United States Circuit Judge for the Eighth Circuit,
sitting by designation.

TJOFLAT, Circuit Judge:

I.

The facts giving rise to this case are more fully documented in this court's prior opinion from the last round of this litigation, and we will not recount them all here. See generally Agripost v. Miami-Dade County, 195 F.3d 1225 (11th Cir. 1999). For present purposes, it suffices to sketch the basics of the controversy. Agripost LLC and Agri-Dade, Ltd. are successors in interest to Agripost, Inc. (collectively "Agripost"), which had subleased a plot of publically owned land from Dade County, Florida ("the County") in 1986 for the purposes of constructing and operating a waste-disposal plant that could convert waste into agriculturally useful compost. One of the conditions of the sublease was that Agripost obtain and maintain an unusual use zoning permit because the land was zoned only for agricultural use. The sublease was also conditioned on Agripost's continuing use of the land for the described waste-conversion plant.[1] Agripost made a proposal to the Dade County zoning authority, received a conditional unusual use permit, constructed the plant, and began operating it in 1989. One of

---

[1] The lease provides in relevant part: "[T]he lease agreement shall be terminated at the option of the Lessor when and if the said premises including land and improvements shall cease to be used for a resource recovery facility. The Lessee shall upon termination surrender the premises."

2

the conditions of the unusual use permit is that Agripost "compl[ies] with all conditions and requirements of the Department of Environmental Resources Management."

Within a year, however, the plant began having problems with odor emissions. After a hearing the County's Department of Environmental Resource Management revoked the unusual use permit because it deemed the plant's continued operation a public nuisance. This decision was upheld by the Zoning Appeals Board and then the County Commission. Without the unusual use permit, Agripost's lease on the land was terminated on its own terms.

Agripost challenged the County's decision to revoke the permit before a panel of the Dade County Circuit Court that handles administrative appeals. The panel affirmed the agency's decision after concluding that Agripost violated the terms of the conditional permit when it failed to reduce the noxious fumes generated by the plant's operation. Agripost sought but was denied review of the case by the Florida Third District Court of Appeal.

After this first go-around in state court, Agripost brought suit against the County in the United States District Court for the Southern District of Florida, alleging that the revocation of the unusual use permit amounted to a regulatory taking without just compensation as required by the Fifth Amendment's Takings

Clause.[2]  The district court dismissed the complaint for lack of ripeness under the doctrine of <u>Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City</u>, 473 U.S. 172, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985).  In <u>Williamson County</u>, the Supreme Court held that a federal constitutional takings claim is not ripe until the plaintiff has unsuccessfully pursued a compensation claim in state court.  <u>Id.</u> at 195, 105 S. Ct. at 3121.  We affirmed the dismissal on ripeness grounds.  <u>See</u> <u>Agripost</u>, 195 F.3d at 1233-34.

Agripost then sued the County in the Dade County Circuit Court, seeking damages based on, among other state law claims, inverse condemnation, alleging that the permit revocation deprived it of all economically viable use of the property.  The complaint also sought damages under the Fifth Amendment's Takings Clause but expressly reserved the right to litigate this federal claim in federal court at the conclusion of the circuit court proceedings, as this court, in <u>Fields v. Sarasota Manatee Airport Authority</u>, 953 F.2d 1299 (11th Cir. 1992), held that litigants in Agripost's position could do.  The circuit court granted the County's motion for summary judgment on all counts of the complaint, and the Third District Court of Appeal affirmed.  On the inverse condemnation claim, that

---

[2] The Fifth Amendment's Takings Clause is applicable to the states under the Fourteenth Amendment's Due Process Clause.  <u>See</u> <u>Palazzolo v. Rhode Island</u>, 533 U.S. 606, 617, 121 S. Ct. 2448, 2457, 150 L. Ed. 2d 592 (2001).

court held that because Agripost's property interest in the particular use, i.e., as a waste disposal facility, was conditional, Agripost did not have a property interest protected by either the state or federal constitutions against a revocation of the use permit once the County determined that Agripost was in violation of the permit's conditions. The Florida Supreme Court denied certiorari review.

Agripost thereafter returned to the federal district court, re-filing its Fifth Amendment regulatory takings claim. Agripost alleged that by revoking the conditional use permit and causing the plant to cease operations, the County deprived it of all economically beneficial use of the property without compensation. This time, the district court granted the County's motion for summary judgment on the grounds that the federal takings claim was barred by res judicata or claim preclusion as a result of the disposition in Agripost's state court suit. The court also held that Agripost's claim is barred by collateral estoppel or issue preclusion. This appeal followed.

II.

A.

We review the district court's summary judgment order de novo, applying the same standard as the district court, viewing all evidence in the light most favorable to the nonmoving party, in this case Agripost. See Custom Mfg. &

Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 646-47 (11th Cir. 2007).

Claim and issue preclusion are familiar legal doctrines, though they generate more than their fair share of complexity in application. One area in which they have been particularly troublesome is in takings cases brought in federal court after Williamson County. Williamson County boils down to the rule that state courts always have a first shot at adjudicating a takings dispute because a federal constitutional claim is not ripe until the state has denied the would-be plaintiff's compensation for a putative taking, including by unfavorable judgment in a state court proceeding. Once that occurs, and the plaintiff repairs to the federal district for compensation under the Fifth Amendment's Takings Clause, the plaintiff faces the possibility that the legal or factual issues resolved by the state court might have preclusive effect under the Full Faith and Credit statute, 28 U.S.C. § 1738.[3] In short, the interaction of § 1738 and Williamson County might deprive the plaintiff of the chance to litigate his Takings Clause claim in a federal

---

[3] The statute reads in relevant part:

> The records and judicial proceedings of any court of any . . . State, Territory or Possession, . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738. Thus, federal courts apply the preclusion law of the state whose courts rendered the first decision, see Cmty. Bank v. Torcise, 162 F.3d 1084, 1086 n.5 (11th Cir. 1998), which in this case is the law of Florida.

forum, unless there were some exception to the general principles of preclusion encapsulated in § 1738.

In Fields, we held that a plaintiff who involuntarily litigates in state court because of the rule of Williamson County can make an express reservation of his Takings Clause claim as an exception to the state law claim preclusion principles that would apply under § 1738. See Fields, 953 F.2d at 1306. That decision was based in large part on the opinion of our predecessor court in Jennings v. Caddo Parish School Board, 531 F.2d 1331 (5th Cir. 1976) (per curiam) (stating in dicta that plaintiff could have made an express reservation of her federal constitutional claim in state court in order to avoid claim and issue preclusion).[4] The Fields panel recognized the tension between permitting claim-splitting in the takings context, as authorized by Jennings, and the well-established rule of Allen v. McCurry, 449 U.S. 90, 101, 103-04, 101 S. Ct. 411, 419, 66 L. Ed. 2d 308 (1980),

---

[4] This court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc). In Jennings, a former public school teacher unsuccessfully sued the school board in state court alleging that her termination was racially discriminatory and therefore denied her equal protection of the laws in violation of the Fourteenth Amendment. The district court held that because the plaintiff alleged in the state case that the firing was racially motivated and the state court rejected her claim on the merits, res judicata barred her relitigation of the equal protection claim in federal court. Jennings v. Caddo Parish Sch. Bd., 531 F.2d 1331, 1331-32 (5th Cir. 1976). The panel on appeal held that the plaintiff could have but failed to make an express reservation of her federal claim on the record in the state court proceeding, as provided by England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 421-22, 84 S. Ct. 461, 468, 11 L. Ed. 2d 440 (1964), and therefore affirmed. Jennings, 531 F.2d at 1332.

interpreting § 1738 to give prior state court adjudications of federal constitutional issues preclusive effect in federal courts.  See Fields, 953 F.2d at 1303-04.  Under the Court's interpretation of § 1738, state claim preclusion law that disallows separating and reserving the Takings Clause claim from the litigation of state law claims would be given full effect in federal court and would seem to rule out the kind of reservation discussed in Jennings.

Nonetheless, the Fields panel held that Allen did not implicitly overrule Jennings and did not prevent plaintiffs from reserving their Takings Clause claims. The panel analogized Fields's situation to that of a plaintiff forced into state court when a federal court invokes the Pullman abstention doctrine, R.R. Comm'n of Tex. v. Pullman Co., 312 U.S. 496, 498-502, 61 S. Ct. 643, 644-46, 85 L. Ed. 971 (1941), and abstains from deciding the case.  In Pullman abstention cases, i.e., cases in which the federal courts have subject matter jurisdiction but relinquish it to enable the state courts to resolve antecedent state law issues that could moot the need for further proceedings in the federal case, the Supreme Court has held that the state court plaintiff may expressly reserve her federal claims so that the state court does not reach beyond the state law issues.  England v. La. State Bd. of Med. Exam'rs, 375 U.S. 411, 421-22, 84 S. Ct. 461, 468, 11 L. Ed. 2d 440 (1964).  To be sure, the plaintiff in a Pullman abstention case already has a ripe federal claim

8

whereas the plaintiff in a takings case, per Williamson County, does not. Although Jennings expanded the scope of the reservation beyond the boundaries originally drawn in England, see Fields, 953 F.2d at 1305, the Fields panel harmonized Jennings's broad application with the Supreme Court's interpretation of § 1738.  See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 85 n.7, 104 S. Ct. 892, 898 n.7, 79 L. Ed. 2d 56 (1984); Fields, 953 F.2d at 1305-06 & nn.5-7.

Much of the basis for reaffirming Jennings's continued validity relies on dicta in footnote seven of Migra.  Migra addressed the claim-preclusive effects of a prior state court adjudication in which the federal plaintiff had also been the state court plaintiff.  Migra, 465 U.S. at 77, 104 S. Ct. at 894.  The alignment of the parties is similar to the alignment in Fields, and unlike Allen, both Migra and Fields addressed claim preclusion and not issue preclusion.  Footnote seven in the Court's opinion strongly suggests that the voluntariness of the plaintiff's presence in state court determines whether the plaintiff can reserve a federal claim for federal court later.[5]  See id. at 85 n.7, 104 S. Ct. at 898 n.7 ("In the event that a § 1983 plaintiff's federal and state-law claims are sufficiently intertwined that the

_____

[5] Of course, this voluntariness matters only when the litigant is the plaintiff in both forums.  A state court criminal defendant is clearly not voluntarily in state court, yet the state court's decisions on federal constitutional issues are preclusive in federal court.  See Allen v. McCurry, 449 U.S. 90, 101, 103-04, 101 S. Ct. 411, 419, 66 L. Ed. 2d 308 (1980).

9

federal court abstains . . . the plaintiff can preserve his right to a federal forum for his federal claims . . . .").  Thus, the <u>Fields</u> panel reasoned that permitting the reservation of a federal takings claim when the plaintiff litigates in state court due to <u>Williamson County</u> is sufficiently consistent with the post-<u>Migra</u> interpretation of § 1738 because the plaintiff is in state court involuntarily.  <u>Fields</u>'s gloss on the <u>Jennings</u> reservation has since become the settled law in this circuit.  <u>See, e.g.</u>, <u>Bauknight v. Monroe County</u>, 446 F.3d 1327, 1330-31 (11th Cir. 2006); <u>Saboff v. St. John's River Water Mgmt. Dist.</u>, 200 F.3d 1356, 1360 (11th Cir. 2000).

The County argues that a recent Supreme Court decision, <u>San Remo Hotel, L.P. v. City and County of San Francisco</u>, 545 U.S. 323, 125 S. Ct. 2491, 162 L. Ed. 2d 315 (2005), rejects the availability of an <u>England</u>/<u>Jennings</u> reservation of federal takings claims in situations like the present case.  The litigation culminating in <u>San Remo Hotel</u> resembles this case not only in the legal issues raised but also in the tangled procedural history spanning state and federal courts.  <u>San Remo Hotel</u> began in California state court when the plaintiff property owner sought review of the imposition of a "conversion fee" by the City and County as a condition of permitting the plaintiff's proposed transformation of a low-rent residential building into a tourist hotel.  <u>See id.</u> at 329, 125 S. Ct. at 2496.  While the petition was pending, the plaintiff sued the City and County in federal district

10

court alleging, among other claims, that the conversion fee violated the Takings Clause. The district court, following Williamson County, granted the defendants summary judgment as to the takings claim on the ground of ripeness. Id. at 330, 125 S. Ct. at 2497. The plaintiffs subsequently sued in state court raising only state law claims and reserving their Takings Clause claim by reference to England. See id. at 331 & n.6, 125 S. Ct. at 2497 & n.6. Throughout the course of the state court case, which went all the way to the California Supreme Court, the parties litigated and the courts decided the substance of federal constitutional issues in the form of the state law takings claim. Specifically, the constitutional issue was which standard governs the question of whether the government's conversion fee was a valid assessment in exchange for a building permit. See id. at 333, 125 S. Ct. at 2498-99. The California Supreme Court held that the lower standard applied and that the government's assessment was reasonable and therefore not a compensable taking. Id.

The plaintiff then re-filed its Takings Clause claim in the federal district court. The district court held, and the Ninth Circuit affirmed, that California issue preclusion law applies and that issues raised by plaintiff's federal constitutional claim were precluded because the California courts "had interpreted the relevant substantive state takings law coextensively with federal law." Id. at 335, 125 S.

11

Ct. at 2500. The Supreme Court affirmed, holding that there is no exception to the application of issue preclusion as required by § 1738 and Allen for cases in which the plaintiff is forced to pursue compensation through litigating first in state court. Id. at 338, 125 S. Ct. at 2501-02. Moreover, the Court emphasized that England reservations are limited to cases in which there was proper federal jurisdiction prior to the invocation of Pullman abstention, in other words, when the "antecedent state issue requiring abstention was distinct from the reserved federal issue." Id. at 339, 125 S. Ct. at 2502.

Although the Supreme Court's reasoning in San Remo Hotel seems to undercut much of the support for Jennings and Fields, we need not decide now whether they have been implicitly overruled to the extent that they would permit the reservation of federal claims in non-Pullman situations. See, e.g., Atlantic Sounding Co., Inc. v. Townsend, 496 F.3d 1282, 1284 (11th Cir. 2007) ("[T]hat the reasoning of an intervening high court decision is at odds with that of our prior decision is no basis for a panel to depart from our prior decision."). San Remo Hotel was not a claim preclusion case; it was an issue preclusion case, and because we need not extrapolate from the holding in San Remo Hotel to decide this appeal, we will not do so. Accepting arguendo that Agripost has successfully reserved its federal constitutional claim, we now consider whether it is nonetheless barred by

12

issue preclusion from going forward with that claim.

B.

Florida issue preclusion doctrine forecloses relitigation if: (1) the parties are identical with those from the prior case, (2) the issues are identical, (3) there was a full and fair opportunity to litigate the issues and they were actually litigated, and (4) those issues were necessary to the prior adjudication.  See Dadeland Depot, Inc. v. St. Paul Fire and Marine Ins. Co., 945 So. 2d 1216, 1235 (Fla. 2006).  Here, the parties are the same, the issues forming Agripost's state takings claim are the same as those involved in Agripost's federal takings claim, see, e.g., Graham v. Estuary Props., Inc., 399 So. 2d 1374, 1380 (Fla. 1981),[6] and the resolution of these issues was necessary for the state court's decision in favor of the County.

Agripost contends that it did not have a full and fair opportunity to litigate its state law takings claim because the court did not permit further discovery and

---

[6] Agripost argues that the Dade County Circuit Court's resolution of the same state and federal constitutional issue in this case, namely whether a conditional and revocable use permit can be revoked without effecting a taking, indicates that Florida takings law has taken a "novel approach" and diverged from federal takings law.  However, the court consciously applied what it thought to be both the federal and state law on the issue.  Moreover, in its state court appellate brief, Agripost argued that state takings law "is governed by Lucas[ v. South Carolina Coastal Council, 505 U.S. 1003, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992)]," acknowledging that the state and federal law on the relevant takings issues are coextensive.  The Third District Court of Appeal held that the federal and state law on this issue were the same.  See Agripost, Inc. v. Metropolitan Miami-Dade County, 845 So. 2d 918, 920 (Fla. 3d Dist. Ct. App. 2003); cf. Trafalgar Corp. v. Miami County Bd. of Comm'rs, No. 06-3578, 2008 U.S. App. LEXIS 4475, at *6-7 (6th Cir. Mar. 3, 2008).  Agripost's real gripe here is that the state court erred, but that of course is not a defense to collateral estoppel.

13

relied exclusively on the extensive record created in the previous zoning litigation that ended in the revocation of Agripost's permit. This argument never leaves the hangar because the state court concluded, as a matter of law, that Agripost no longer had a protected property right in their nonconforming use given the administrative determination – upheld on judicial review – that Agripost had failed to comply with the terms of its conditional use permit.[7] See Agripost, Inc. v. Metro. Miami-Dade County, 845 So. 2d 918, 920 (Fla. 3d Dist. Ct. App. 2003). Agripost argued to the state court that it still had a property right, even though it did not own the land in question and violated of the conditions of its lease when it lost the use permit, and the state courts rejected the argument. Nothing in that litigation rendered Agripost's opportunity to make its case insufficiently "full and

---

[7] Agripost contends that this conclusion is an impermissible application of collateral estoppel from the zoning litigation. It is not so. The zoning and state takings litigation addressed distinct issues: the former concerned whether the revocation was justified, see Agripost v. Miami-Dade County, 195 F.3d 1225, 1232-33 (11th Cir. 1999) (describing earlier zoning litigation), and the latter concerned whether given a justified revocation there was nonetheless a compensable taking of private property. See Lake Lucerne Civic Ass'n, Inc. v. Dolphin Stadium Corp., 878 F.2d 1360, 1370-72 (11th Cir. 1989) (explaining the difference between the two concepts in Florida law). The Dade County Circuit Court expressly rejected the County's argument that the zoning litigation had preclusive effect: "Now, while the prior litigation dealt with the propriety of the revocation, it didn't deal with the question of whether it constituted a taking." The court made a de novo ruling on the merits, concluding that because Agripost was determined to have violated the conditions of its unusual use permit – a fact that is undisputed – Agripost no longer had a valid, compensable property interest in that use, whether or not the violations amounted to a nuisance under other principles of Florida property law. See Agripost v. Metro. Miami-Dade County, 845 So. 2d at 920 (Fla. 3d Dist. Ct. App. 2003) (citing Smalleylogics Corp. v. Dade County, 176 So. 2d 574, 578 (Fla. 3d Dist. Ct. App. 1965)).

14

fair";[8] Agripost is simply not entitled to discovery on claims lacking any legal basis, as the state court concluded. Florida preclusion law does not allow Agripost a second bite at the apple, and § 1738 does not permit this court to second-guess the correctness of the Florida court's decision on the merits.[9] Because a state court of competent jurisdiction held that Agripost did not have a compensable property interest, its federal takings claim necessarily fails, and summary judgment for the County was proper.

## III.

For the reasons stated herein, the judgment of the district court is

AFFIRMED.

---

[8] Under Florida law, a full and fair opportunity to litigate an issue does not entail a full civil trial and its accouterments. See E.I. DuPont de Nemours & Co., Inc. v. Melvin Piedmont Nursery, 971 So. 2d 897, 898 (Fla. 3d Dist. Ct. App. 2007) (per curiam) (noting that collateral estoppel applies to judgment rendered as a sanction in prior litigation); Paresky v. Miami-Dade County Bd. of County Comm'rs, 893 So. 2d 664, 665 (Fla. 3d Dist. Ct. App. 2005) (per curiam) (finding full and fair opportunity in "quasi-judicial hearing" before County Commission).

[9] In any event, it is sufficiently clear under Florida law that Agripost's use of the publically owned land was "not part of [its] title to begin with," Lucas, 505 U.S. at 1027, 112 S. Ct. at 2899, because it did not own the land and because its use was deemed noxious. See Marine One, Inc. v. Manatee County, 898 F.2d 1490, 1492 (11th Cir. 1990) (stating that "it is clear from . . . Florida cases that revocation" of a use permit on publically owned land "would not constitute a taking of property"); Osceola County v. Best Diversified, Inc., 936 So. 2d 55, 59 (Fla. 5th Dist. Ct. App. 2006) ("The threshold issue on appeal is whether [plaintiff] was entitled to compensation from the County . . . when his request for a conditional use and permit were denied based on [a] determination [that] the facility was the cause of noxious odors and constituted a public nuisance. The answer is clearly no." (citing Lucas)).