Elizabeth J. NEUMONT,
et al, Plaintiffs,

v.

MONROE COUNTY, Florida
Defendant.

No. 99–10054–CIV–PAINE, 99–
10054–CIV–VITUNAC.

United States District Court,
S.D. Florida.

Nov. 21, 2002.

Harold E. Wolfe, Jr., West Palm Beach, FL, Eric M. Grant, LeBoeuf Lamb Greene & McRae, Hartford, CT, James Herman Hicks, William Hoffman Pincus, Hicks Brams & Scher, West Palm Beach, FL, for plaintiffs.

Karen Kittian Cabanas, Morgan & Hendrick, Key West, FL, David L. Jordan, Fla. Dept. of Community Affairs, Assist. General Counsel, Tallahassee, FL, for defendants.

### ORDER ADOPTING IN PART REPORT AND RECOMMENDATION

PAINE, District Judge.

This matter is before the court on two Reports and Recommendation issued by the Honorable Ann E. Vitunac: an Omnibus Report and Recommendation dated May 18, 2001 (D.E.# 232), and an Amended Omnibus Report and Recommendation dated August 27, 2001 (D.E.# 248). Said reports covered the following motions:

1. Plaintiffs' Motion for Partial Summary Judgment as to Count I (D.E.# 94);

2. Defendant's Cross–Motion for Summary Judgment as to Count I (D.E.# 99);

3. Defendant's Motion for Partial Summary Judgments as to Counts II, V, VI, VII, VIII, and IX (D.E.# 124);

4. Plaintiffs' Motion for Partial Summary Judgment as to Count X (D.E.# 171).

The undersigned conducted a limited hearing on the objections to said Reports and Recommendations on February 12, 2002. For the reasons set forth below, the court finds that the recommendations of the Magistrate Judge should be adopted in part.

## PROCEDURAL HISTORY

This class action case focuses on a Monroe County Ordinance (Ordinance 004–1997). This ordinance, adopted in 1997 and enforced beginning December 15, 1998, places restrictions on certain uses of properties as vacation rentals. Plaintiffs are mostly property owners in Monroe County subject to the Ordinance, and have brought thirteen claims against defendant Monroe County. These claims are as follows:

Count I: Declaratory Judgment as to whether the Ordinance was prematurely enforced between December 15, 1998 (first day of its enforcement) and March 16, 2000 (when the Florida Supreme Court denied review of the Ordinance)

Count II: Compensation for temporary taking resulting from the premature enforcement (alleged in Count I)

Count III: Violation of Civil Rights under color of state law as a result of the premature enforcement (alleged in Count I)

Count IV: Other damages resulting from the premature enforcement (alleged in Count I)

Count V: Declaratory Judgment as to the existence of a compensable taking by the enactment of the Ordinance

Count VI: Inverse Condemnation based upon a facial violation of the Fifth Amendment

Count VII: Inverse Condemnation based upon as-applied violation of the Fifth Amendment

Count VIII: Inverse Condemnation based upon facial violation of Art.X, § 6(a) of the Florida Constitution

Count IX: Inverse Condemnation based upon as-applied violation of Art.X, § 6(a) of the Florida Constitution

Count X: Declaratory Judgment as to whether Ordinance is void ab initio because enacted in violation of Florida Statutes § 125.66

Count XI: Compensation for Taking of private property without due process of law

Count XII: Violation of Civil Rights under color of state law as a result of violation (Alleged in Count X)

Count XIII: Other damages resulting from wrongful enactment of Ordinance

## SUMMARY JUDGMENT STANDARD

The procedure for disposition of a summary judgment motion is well established. According to the Federal Rules of Civil Procedure, summary judgment is authorized only when:

the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56.

The party moving for summary judgment has the burden of meeting this exacting

standard. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In applying this standard, the *Adickes* Court explained that when assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. All reasonable doubts about the facts should be resolved in favor of the nonmovant. *Id.*

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the nonmoving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Environmental Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026, 1031 (5th Cir.1982). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lob-by, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### UNDISPUTED FACTS

*As to Plaintiffs' Motion for Partial Summary Judgment as to Count I (D.E.# 94) and Defendant's Cross–Motion for Summary Judgment as to Count I (D.E.# 99)*

1. Ordinance 004–1997 ("the Ordinance") is a Land Development Regulation ("LDR") within the meaning of Fla Stat. 380.031(8). Under Chapter 380, the Department of Community Affairs (the "Agency") serves as the "State land planning agency." § 380.031(18), *Fla. Stat.* (1998). Under the statutory scheme, the Agency reviews any LDR and rejects, approves, or approves with modification any LDR.

2. The Agency is an "agency" within the meaning of Chapter 120 of the Florida Statutes. As such, the Agency is governed by the provisions of the Administrative Procedures Act, codified at § 120.52(1)(b), *Fla. Stat.*

3. Proceedings approving the Ordinance are subject to the provisions of Section 380.05(6) of the Florida Statutes, which states, in pertinent part:

> No proposed land development regulation within an area of critical state concern becomes effective under this section until the state land planning agency issues its final order or, if the final order is challenged, until the challenge to the order is resolved pursuant to Chapter 120. *Fla. Stat.* § 380.05(6).

4. The Ordinance was passed by the Monroe County Commissioners and then submitted to the Agency for review as required by Chapter 380. On December 4, 1998, the Agency entered its Final Order,

Order No. DCA98–OR–184 (the "Agency's Final Order"), approving the Ordinance as consistent with the Principles for Guiding Development.

5. The Agency's Final Order contained a "Notice of Rights," which provided, in pertinent part:

> The parties are hereby notified of their right to seek judicial review of the Final Order pursuant to Section 120.68 Florida Statutes, and Florida Rules of Appellate Procedure 9.030(b)(1)(c) and 9.110. To initiate an appeal, a Notice of Appeal must be filed with the Department's Clerk of Agency Proceedings, and with the appropriate District Court of Appeal within thirty (30) days of the filing of this Final Order with the Department's Clerk of Agency Proceedings.

6. Defendant admittedly began enforcing the Ordinance on or about December 15, 1998. *See* Defendant's Amended Admission at 2(n & o).

7. The first actual citation was issued by Defendant on February 26, 1999. *See* Affidavit of Tom Simmons; *see also* Schaffer Citation issued February 26, 1999.

8. The Ordinance was enforced against both property owners and vacation rental managers through both civil and criminal sanctions. *See* Affidavits of Wayne W. Erickson, Lisa M. Poponea, and Wendy J. Sullivan–Glenn.

9. After the Agency's Final Order was issued, certain interested persons (the "Rathkamp Petitioners") filed a Motion for Stay, requesting the Department stay its Final Order pending appeal. *See* Notice of Administrative Appeal, dated December 23, 1998, filed in Case No. 98–3383/R 982043 (Third District Court of Appeal, Florida). In filing this Motion for Stay, the Rathkamp Petitioners were exercising their legal options pursuant to Chapter 120.

10. On January 22, 1999, the Agency issued an order denying said Motion for Stay, which stated, in pertinent part:

> Although the Ordinance was adopted by the Monroe County Commission on February 3, 1997, the Ordinance did not become effective until the Petitioner's chapter 120 challenge was resolved by issuance of the Department's Final Order. *See* Agency' Order Denying Motion for Stay.

11. On December 23, 1998, the Rathkamp Petitioners timely initiated an Appeal of the Department's Final Order, as provided by the Notice of Rights and Section 120 of the Florida Statutes.

12. The Rathkamp Petitioners filed a Motion for Stay of Enforcement and Request for Emergency Hearing with the District Court of Appeals, Third District on January 27, 1999. This Motion specifically argued to the court that:

> [Pursuant to Section 380.05(6), Florida Statutes]...a stay of the Department's [Agency's] Final Order approving Monroe County Ordinance 004–1997 will prevent the Ordinance from becoming effective or from being enforced or implemented by Monroe County. *See* Motion for Stay, filed January 27, 1999, at 3.

13. On January 28, 1999, the District Court of Appeals, Third District issued an Order denying both the Motion for Stay and the Request for Emergency Hearing. *See* January 28, 1998, Order.

14. On August 4, 1999, the District Court of Appeals, Third District, affirmed the Department's Final Order [1].

15. On October 20, 1999, the Third District denied rehearing on the Rathkamp challenge [2].

16. On November 16, 1999, the Rathkamp Petitioners filed Notice to Invoke Discretionary Jurisdiction with the Florida Supreme Court. On March 16, 2002, the Florida Supreme Court issued its ruling declining jurisdiction [3].

*As to Defendant's Motion for Partial Summary Judgments as to Counts II, V, VI, VII, VIII, & IX*

17. The court adopts Undisputed Facts # 1–78 of Plaintiffs' Concise [4] Statement of Facts in Support of Plaintiffs' Response in Opposition to Defendant's Motion for Partial Summary Judgment (D.E.# 206).

18. None of the plaintiffs in the instant action has sought state court remedies for inverse condemnation based on Defendant's adoption and enforcement of the subject Ordinance. *See* Plaintiffs' Response to Defendant's Request for Admissions (filed under D.E. # 187).

*As to Plaintiffs' Motion for Partial Summary Judgment as to Count X*

19. Article VIII, Section 1(f & g) of the Constitution of the State of Florida grant both charter and non-charter county governments the power to enact ordinances. Defendant Monroe County is covered by said provision of the Constitution of the State of Florida.

20. Florida Statutes § 125.66 governs the procedures by which a county is empowered to enact ordinances.

21. Prior to enacting the Ordinance, and pursuant to the requirements of § 125.66, Defendant advertised and held two required public hearings on the proposed ordinance. These hearings were held during meetings of the BOCC on December 10, 1996 (the "First Hearing") and February 3, 1997 (the "Second Hearing") [5].

22. On or about November 7, 8, & 9, 1996, Defendant published its Notice of the First Hearing on the proposed ordinance. *See* Exhibit "B" of Plaintiffs' Concise Statement of Facts in Support of Plaintiffs' Motion for Partial Summary Judgment (D.E.# 172).

23. The Notice of First Hearing published in November 1996 stated that "[c]opies of the proposed changes are available at the Planning Department offices in the Upper and Middle Keys during normal business hours." *See* Exhibit "C" of Plaintiffs' Concise Statement of Facts in Support of Plaintiffs' Motion for Partial Summary Judgment.

24. At the time the Notice of First Hearing was published, the only available draft of the proposed ordinance was the September 17, 1996 draft (the "September

---

**1.** The Third District's Order has been judicially noticed by this Court.

**2.** The Third District's Order has been judicially noticed by this Court.

**3.** The subject order has been judicially noticed by this Court.

**4.** The court considers "concise" a misnomer.

**5.** Transcripts of said hearings have been judicially noticed by this Court.

17th draft")[6]. *See* Exhibit "H" of Plaintiffs' Concise Statement of Facts in Support of Plaintiffs' Motion for Partial Summary Judgment.

25. At the First Hearing, the BOCC considered and discussed a draft ordinance dated December 10, 1996 (the "Dec. 10th draft") rather than the September 17th draft[7]. *See* Exhibit "H" of Plaintiffs' Concise Statement of Facts in Support of Plaintiffs' Motion for Partial Summary Judgment.

26. The December 10th draft was not completed until December 10, 1996, and was not distributed to the BOCC until after the start of the First Hearing. *See* Exhibit "H" of Plaintiffs' Concise Statement of Facts in Support of Plaintiffs' Motion for Partial Summary Judgment; *see also* Dec. 10th Mtg. Tr. at 21:4–6.

27. The December 10th draft was different than the September 17th draft in the following respects:

(a) The September 17th draft proposed a ban on vacation rentals throughout Monroe County, while the December 10th draft took a district-by-district approach to the ban;

(b) The September 17th draft prohibited vacation rentals in some select districts and allowed an option to created a sub-district where vacation rentals would be permitted, while the December 10th draft eliminated the sub-district option for these select districts;

(c) The September 17th draft proposed to create regulations of vacation rent-als where allowed, while the December 10th draft substantially added to the quantity of regulations and the difficulty of meeting the regulatory burdens. *See and compare* September 17th draft and December 10th draft; *see also* Plaintiffs' Concise Statement of Facts in Support of Plaintiffs' Motion for Partial Summary Judgment at Exhibit "I," FN 6 & 7.

28. On or about January 11, 12 & 16, 1997, Defendant published Notice of the Second Hearing on the proposed ordinance. *See* Exhibit "D" of Plaintiffs' Concise Statement of Facts in Support of Plaintiffs' Motion for Partial Summary Judgment.

29. The Notice of Second Hearing published in January 1997 stated that "[c]opies of the proposed changed are available at the Planning Department offices in the Upper and Middle Keys during normal business hours." *See* Exhibit "E" of Plaintiffs' Concise Statement of Facts in Support of Plaintiffs' Motion for Partial Summary Judgment.

30. At the Second Hearing, the BOCC considered and discussed a draft ordinance dated January 29, 2997 (the "January 29th draft")[8]. *See* Feb. 3rd Tr. at 7:18–20.

31. The January 29th draft was not distributed to the press and public until Friday, January 31, 1997. *See* Feb. 3rd Tr. at 7:18–20, 8:2–6.

32. At the Second Hearing the BOCC also considered and discussed certain

---

**6.** The September 17th draft has been judicially noticed by this Court.

**7.** The December 10th draft has been judicially noticed by this Court.

**8.** The January 29th draft has been judicially noticed by this Court. The court recognizes that there are multiple versions of this draft in the record. However, at the November 12, 2002, hearing held on this matter, parties stipulated that the operative version for the purposes of resolution of pending summary judgment motions is that supplied by Defendant pursuant to its Corrected Motion for Judicial Notice (D.E.# 239).

changes to the January 29th draft contained in a document entitled an "Errata Sheet." *See* Exhibits "G" and "H" of Plaintiffs' Concise Statement of Facts in Support of Plaintiffs' Motion for Partial Summary Judgment.

33. The Ordinance was officially enacted by Defendant at the Second Hearing. *See* Plaintiff's Complaint at Exhibit 13.

34. The Ordinance passed by a vote of three to two. *See* Exhibit "H" of Plaintiffs' Concise Statement of Facts in Support of Plaintiffs' Motion for Partial Summary Judgment.

35. Commissioners Freeman and London voted with the three person majority to pass the Ordinance but, prior to the vote, expressed reservations about how the Ordinance would affect the various fishing districts; and both indicated that they did not want to vote on the Ordinance until further study of the issue. *See* Exhibit "G" of Plaintiffs' Concise Statement of Facts in Support of Plaintiffs' Motion for Partial Summary Judgment at 195:4–196:4, 210:24–211:7, 211:8–18.

36. At the Second Hearing, the BOCC voted to change the status of vacation rentals in Sparsely Settled Residential Districts from permissive to prohibited. *See* Exhibit "H" of Plaintiffs' Concise Statement of Facts in Support of Plaintiffs' Motion for Partial Summary Judgment.

37. Both the December 10th draft, considered at the First Hearing, and the January 29th draft, considered at the Second Hearing, permitted vacation rentals in Sparsely Settled Residential Districts. The Ordinance as enacted prohibits vacation rentals in Sparsely Settled Residential Districts.

39. At the Second Hearing, the BOCC voted to eliminate any reference whatsoever to twenty-two (out of twenty-three total) Commercial Fishing Districts in Monroe County. *See* Exhibit "H" of Plaintiffs' Concise Statement of Facts in Support of Plaintiffs' Motion for Partial Summary Judgment.

40. The December 10th draft, considered at the First Hearing, and the January 29th draft, considered at the Second Hearing, each addressed vacation rentals in most of the twenty-two fishing districts that the BOCC voted to eliminate from the Ordinance at the Second Hearing.

41. The Ordinance as enacted makes no reference to the Commercial Fishing Area District, Commercial Fishing Village District, or any of the twenty Commercial Fishing Special Districts.

42. No reference was made to the Commercial Fishing Residential District in the September 17th draft, the December 10th draft, or the January 29th draft. The first and only mention of the Commercial Fishing Residential District was in the Errata Sheet introduced at the Second Hearing. *See* Subject Drafts and Errata Sheet.

43. The BOCC voted to approve the changes to the proposed ordinance contained in the Errata Sheet, including the prohibition against vacation rentals in Commercial Fishing Residential District. *See* Exhibit "H" of Plaintiffs' Concise Statement of Facts in Support of Plaintiffs' Motion for Partial Summary Judgment.

44. The Ordinance as enacted prohibits vacation rentals in Commercial Fishing Residential District.

## ANALYSIS

*Count I: Premature Enforcement*

In Count I, plaintiffs seek a declaratory judgment regarding whether the Ordi-

nance was prematurely enforced during the time period of December 15, 1998 (the undisputed date Defendant began enforcement) through March 16, 2000 (the date the Florida Supreme Court denied review). Essentially, plaintiffs contend that the Rathkamp Petitioners initiated a "challenge" of the Agency's Final Order, which was unresolved until the Florida Supreme Court declined to exercise discretionary jurisdiction on March 16, 2000. Defendants counterclaimed for summary judgment on this count, asserting three alternate positions (1) res judicata bars plaintiffs' claim for declaratory relief on the premature enforcement issue; (2) the court should decline to rule on the issue of premature enforcement under the *Buford* abstention doctrine; and/or (3) plaintiffs' claim on the premature enforcement issue is not ripe for judicial review.

The court begins by noting a statement proffered by Rathkamp Petitioners in their Motion for Stay of Enforcement and Request for Emergency Hearing with the District Court of Appeals, Third District on January 27, 1999. On page 3, paragraph 6 of this document, the Rathkamp Petitioners note:

> Pursuant to Section 380.05(6) of the Florida Statutes:
>
> No proposed land development regulation within an area of critical state concern becomes effective under this section until the state land planning agency issues its final order or, if the final order is challenged, until the challenge to the order is resolved pursuant to Chapter 120.
>
> *Therefore, a stay of the Department's Final Order approving Monroe County Ordinance 004–1997 will prevent the Ordinance from becoming effective or from being enforced or implemented by*

*Monroe County.* Motion for Stay, filed January 27, 1999, at 3 (emphasis supplied).

This statement recognizes that, without a stay, Ordinance 004–1997 would become effective and enforced or implemented by Monroe County. When the District Court of Appeal, Third District, denied the Rathkamp Petitioners' Motion to Stay, it inherently permitted the enforcement of the Ordinance.

 With this as a preface, the court will turn to the recommendation of the Magistrate Judge. In the Amended Omnibus Report and Recommendation, the Magistrate Judge correctly noted that the Declaratory Judgment Act authorizes a district court to grant declaratory relief, but such a determination is discretionary. Under the Act, codified at 28 U.S.C. § 2201(1), a "court *may* declare the rights and other legal relations of any interest party seeking such declaration whether or not further relief is or could be sought" (emphasis supplied). Furthermore, a district court should consider denying declaratory relief if the claims of all parties can be adjudicated in state court proceedings. *See Magnolia Marine Transport Co., Inc. v. Laplace Towing Corp.,* 964 F.2d 1571, 1581 (5th Cir.1992)(quoting *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942)).

In this instance, the issue of premature enforcement could certainly have been adjudicated in state court proceedings. Without reaching a determination on the res judicata argument offered by Defendant, the court is inclined to believe that the Rathkamp Petitioners began to interject the theory of premature enforcement in their efforts to obtain a stay pending appellate review of the Agency's Final Order. Indeed, the Rathkamp Petitioners

directly acknowledged that without a stay, the Ordinance could be enforced by Defendant. It is likely that inherent in the denial of this Motion to Stay, the District Court of Appeal was making a determination on the premature enforcement issue.

■ Nonetheless, at the suggestion of *Magnolia Marine,* and upon recommendation by the Magistrate Judge, the court will deny both motions for summary judgment on Count I, and exercise its discretion under the Declaratory Judgment Act to dismiss Count I [9]. In a similar fashion, and as more fully explained in the Amended Omnibus Report and Recommendation, the court will also exercise its discretion under the Declaratory Judgment to dismiss Count V.

*Counts VI, VII, VIII, and IX*

■ Defendant moved for summary judgment on Counts II, V, VI, VII, VIII, and IX contending that because plaintiffs have failed to exhaust their state remedies, the aforementioned claims should be dis-missed as unripe [10]. Plaintiffs claim that while the state law may provide a process for obtaining just compensation, issues of material fact remain as to whether that process is inadequate pursuant to *Agripost* [11] and its progeny.

Defendant had the burden of proof on this point, and defendant met its burden with its single factual statement: "None of the plaintiffs in the instant action has sought state court remedies for inverse condemnation based on Defendant's adoption and enforcement of the subject Ordinance." In response to this statement, plaintiffs attempted to overcome summary judgment by creating an issue of fact as to the inadequacy of the state process. This attempt has failed.

The court has analyzed the Magistrate Judge's Report and Recommendation on its Ripeness recommendation, and finds the recommendation to be squarely on point. While the court is cognizant of plaintiffs attempts to utilize the *Drossel* and *Romanoff* [12] cases as illustrations of inadequacy of process [13], the fact remains

---

**9.** Because the court is exercising its discretion under the Declaratory Judgment Act, it need not reach the substantive arguments set forth by the parties. However, the court is inclined to note that, at the very least, the Rathkamp Petitioners' appeal of the Agency's Final Order beyond the Notice of Appeal with the agency is likely appellate review and not directly linked to the 120 challenge. Indeed, even prior to the Agency's review, in denying the Rathkamp Petitioners' Motion for Stay, the Agency indicated that "the chapter 120 challenge was resolved." *See* Order Denying Motion for Stay at 1. The issue of what constitutes a chapter 120 challenge is best-suited for the Florida legislature.

Since Counts II, III, and IV are dependent on a declaration of premature enforcement, which this court has declined to consider, the court will also abstain from deciding these counts, pursuant to the authority cited by the Magistrate Judge in the Amended Omnibus Report and Recommendation.

**10.** Count V was addressed *supra,* and Count II will be addressed *infra.*

**11.** *Agripost, Inc. v. Miami–Dade County,* 195 F.3d 1225, 1231 (11th Cir.1999).

**12.** *Drossel v. Monroe County,* Case No. 96–520–CA–1 (Fla. 16th Jud. Cir.); *Romanoff v. Monroe County,* Case No. 94–1306–CA–18 (Fla. 16th Jud. Cir.).

**13.** The court recognizes the Magistrate Judge's observation that the *Romanoff* plaintiffs did not assert any inverse condemnation claims, and the *Drossel* action, although it involved inverse condemnation claims, was never appealed to the District Court of Appeal, Third District. Thus, these cases are not "tried and true" examples of inadequacy of process with respect to the *subject ordinance.*

that no plaintiff has attempted to test the limits of the *subject ordinance* in the state court forum. Despite plaintiffs' litany of facts citing the nuance involved in the procedural history of this case and *Drossel* and *Romanoff,* defendant's one undisputed fact is enough to grant summary judgment on Counts VI, VII, VIII, and IX on ripeness grounds.

*Count X*

■ Plaintiff moved for summary judgment on Count X, contending that Defendant did not adhere to the guidelines of Florida Statutes § 125.66 in enacting the Ordinance, and, therefore, the Ordinance must be declared *void ab initio.* In the Amended Omnibus Report and Recommendation, the Magistrate Judge recommends that the court should exercise abstention as to this count (and related Counts XI, XII, and XIII). Upon careful review of the issues, this court disagrees with the Magistrate's Recommendation on this matter for the reasons set forth below.

■ Application of *Pullman* abstention is triggered by the existence of two criteria: (1) the case presents an unsettled question of state law, and (2) the question of state law is dispositive of the case, or would avoid or substantially modify the Constitutional question presented. *See Duke v. James,* 713 F.2d 1506 (11th Cir. 1983). In this instance, Counts X through XIII are based on Plaintiffs' assertions

that the Defendant failed to properly adopt the subject ordinance as required by § 125.66. While these counts contain Constitutional claims, such claims are predicated on Plaintiffs' assertion that the Defendant failed to meet the statutory requirements of § 125.66.

■ Regarding the first element of *Pullman* abstention, the Eleventh Circuit has declared that a question of state law is "unsettled" if it is "fairly subject to an avoiding construction." *Id.* at 1510. An available state law interpretation that moots federal Constitutional claims is an "avoiding construction," triggering application of *Pullman* abstention. *See International Eateries of America, Inc. v. Board of County Commissioners of Broward County,* 838 F.Supp. 580, 582 (S.D.Fla. 1993). The question of state law presented under Count X (and related Counts XI, XII, and XIII) is whether the subject ordinance was enacted in violation of Florida Statutes § 125.66(4) regarding notice requirements of the ordinance enactment procedure. Plaintiffs contend that the nature of Florida law regarding notice requirements is well-settled. The court is inclined to agree with Plaintiffs' characterization of Florida law on this matter[14]. Accordingly, the court finds that, with respect to Count X (and related counts XI, XII, and XIII), *Pullman* abstention is not the appropriate course of action[15].

■ Thus, the court must evaluate Plaintiff's Motion for Summary Judgment

**14.** *See generally First Assembly of God of Naples, Florida v. Ollier County, Florida,* 20 F.3d 419; *Speer v. Olson,* 367 So.2d 207 (Fla. 1978); *3299 N. Federal Highway, Inc. v. Board of County Comm'rs of Broward County,* 646 So.2d 215 (Fla. 4th DCA 1994); *T.J.R Holding Co., Inc. v. Alachua County,* 617 So.2d 798 (Fla. 1st DCA 1993); *Linville v. Escambia County,* 436 So.2d 293 (Fla. 1st DCA 1983).

**15.** In addition to the fact that this court finds Florida law well-settled regarding notice requirements in the ordinance enactment procedure, the court also finds that *Pullman* abstention would be inappropriate in this instance because, as noted by Plaintiffs at the February 12, 2002, hearing, the statute of limitations has run in this matter. Thus, plaintiffs would be without an adequate forum in the state courts.

as to Count X on its merits. Essentially, Plaintiffs have moved for summary judgment on Count X, citing multiple violations of Florida Statutes § 125.66 on the part of the Defendant, including violations of the hearing requirement (both under statute and caselaw) and violations of notice requirements. The court finds there to be existing issues of material fact regarding, *inter alia*, whether substantial and material changes were made during the enactment process, precluding summary judgment at this stage.

ORDERED AND ADJUDGED as follows:

1. Plaintiffs' Motion for Summary Judgment as to Count I (D.E.# 94) is DENIED;

2. Defendant's Cross–Motion for Summary Judgment as to Count I (D.E.# 99) is DENIED;

3. Counts I, II, III, IV, and V are DISMISSED;

4. Defendant's Motion for Partial Summary Judgment as to Counts II, V, VI, VII, VIII, and IX (D.E.# 124) is GRANTED IN PART;

5. Counts VI, VII, VIII, and IX are DISMISSED AS UNRIPE;

6. Plaintiffs' Motion for Partial Summary Judgment as to Count X (D.E.# 171) is DENIED;

7. Counts X, XI, XII, and XIII remain.

## OMNIBUS REPORT AND RECOMMENDATION

VITUNAC, United States Magistrate Judge.

THIS CAUSE is before the Court on Order of Reference (DE 152) from United States District Judge James C. Paine referring to this Court "all pretrial motions, including all motions presently pending, . . . to take all necessary and proper action as required by law and/or to submit a report and recommendation to [the District] Court." Pending before the Court are Defendant's Motion for Partial Summary Judgment as to Counts II, V, VI, VII, VIII, and IX (DE 124); Plaintiffs' Motion for Partial Summary Judgment as to Count I (DE 94); Defendant's Cross–Motion for Summary Judgment as to Count I (DE 99); Plaintiffs' Motion for Partial Summary Judgment as to Count X (DE 171); and the Court's *sua sponte* consideration of whether abstention doctrine applies.

## BACKGROUND

On or about December 15, 1998, Monroe County began enforcing Ordinance 004–1997 (the "Ordinance") which placed restrictions on certain owners use of their properties as vacation rentals. On February 26, 1999, the Monroe County Code Enforcement Board issued its first citation to Diane Schaffer for violating the Ordinance. Prior to February 26, 1999, the Code Enforcement Board did not issue any citations. This action was subsequently brought to challenge the Ordinance.

On November 2, 1999, the District Court dismissed the Plaintiffs' Initial Complaint (DE 1) without prejudice and granted Plaintiffs leave to amend, upon the ruling of the Third District Court of Appeal in *Rathkamp v. Department of Community Affairs,* 740 So.2d 1209 (Fla. 3d DCA 1999). (*See* Order Granting Defendant's Motion to Dismiss (DE 62)). In *Rathkamp,* the Third District Court of Appeal affirmed the final order of the Florida Department of Community Affairs, which

held that Monroe County Ordinance No. 004–1997 is valid under Florida law and consistent with the Principles of Guiding Development for the Florida Keys area of critical state concern, as required by Fla. Stat. § 380.04. The Third District further held that Fla. Stat. § 380.0552(7) does not constitute an unconstitutional delegation of legislative authority to the Florida Department of Community Affairs under the Florida Constitution. On March 16, 2000, the Florida Supreme Court denied the *Rathkamp* plaintiffs' petition for certiorari.

Pursuant to the Court's Order Granting Defendant's Motion to Dismiss (DE 62), Plaintiffs timely filed an Amended Complaint and have eliminated those factual allegations that pertain solely to issues already resolved in *Rathkamp*. In response, Defendant Monroe County filed a Motion to Dismiss Amended Complaint (DE 64). On June 21, 2000, the District Court entered an Order Denying Defendant's Motion to Dismiss Amended Complaint. *See Neumont v. Monroe County Fla.*, 104 F.Supp.2d 1368 (S.D.Fla.2000).

On December 6, 2000, Plaintiff filed a Second Amended Complaint (DE 143) which included the following thirteen counts:

Count I: Declaratory Judgment as to whether Ordinance 004–1997 was prematurely enforced during the time period of December 15, 1998 (11 days after the Department entered its Final Order), and March 16, 2000 (when the Florida Supreme Court denied review). (Complaint at 21.)

Count II: Compensation for Temporary Taking resulting from premature enforcement of Ordinance 004–1997 during the time period of December 15, 1998, and March 16, 2000. (Complaint at 23.)

Count III: Violation of Civil Rights [42 U.S.C. § 1983] under color of state law as a result of the premature enforcement of Ordinance 004–1997 during the time period of December 15, 1998, and March 16, 2000. (Complaint at 25.)

Count IV: Other damages resulting from the premature enforcement of Ordinance 004–1997 during the time period of December 15, 1998, and March 16, 2000. (Complaint at 28.)

Count V: Declaratory Judgment as to the existence of a compensable taking by the enactment of Ordinance 004–1997. (Complaint at 29.)

Count VI: Inverse Condemnation based upon a facial violation of the Fifth Amendment. (Complaint at 31.)

Count VII: Inverse Condemnation based upon as-applied violation of the Fifth Amendment. (Complaint at 33.)

Count VIII: Inverse Condemnation based upon facial violation of Art. X, § 6(a), of the Florida Constitution. (Complaint at 35.)

Count IX: Inverse Condemnation based upon as-applied violation of Art. X, § 6(a), of the Florida Constitution. (Complaint at 36.)

Count X: Declaratory Judgment as to whether Ordinance 004–1997 is void ab initio because enacted in violation of § 125.66, Florida Statutes. (Complaint at 37.)

Count XI: Compensation for Taking of private property without Due Process of Law. (Complaint at 39.)

Count XII: Violation of Civil Rights [42 U.S.C. § 1983] under color of state law as a result of violation of § 125.66, Florida Statutes. (Complaint at 41.)

Count XIII: Other damages resulting from the wrongful enactment of Ordinance 004–1997. (Complaint at 43.)

## DISCUSSION

### A. Ripeness—Counts VI, VII, VIII, IX

The United State Supreme Court has held that a takings claim in violation of the Fifth Amendment is not ripe until the party "seek[s] compensation through the procedures the State has provided for doing so." *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). In *Williamson*, the Court noted that "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Id.* The Court further stated that "[i]f the government has provided an adequate process for obtaining compensation, and if resort to that process 'yield[s] just compensation,' then the property owner 'has no claim against the Government' for a taking." *Id.* at 194–95, 105 S.Ct. 3108 (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1013, 1018, n. 21, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984)). Thus, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.* at 195, 105 S.Ct. 3108. According to *Williamson* a "State's action is not 'complete' in the sense of causing a constitutional injury 'unless or until the State fails to provide an adequate post deprivation remedy for the property loss.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 532 n. 12, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)).

Under Florida law, a property owner may bring an inverse condemnation action in state court to obtain just compensation for an alleged regulatory taking of property. *See Joint Ventures, Inc. v. Department of Transp.*, 563 So.2d 622, 627 (Fla. 1990) (inverse condemnation affords the affected property owner an after-the-fact remedy, when there has already been a taking by regulation); Art. X, § 6, Fla. Const. (forbidding the taking of private property without full compensation); *see also First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987) (Supreme Court recognized that the Fifth Amendment's Just Compensation Clause requires states to provide compensation for temporary regulatory takings). Thus, Plaintiffs had an available state remedy for their inverse condemnations claim when they filed this action in federal court in 1999.

In the case at hand, Plaintiffs have not sought just compensation in State court for the alleged temporary taking resulting from the alleged premature enforcement of *Ordinance 004–1997* which was adopted in 1997 and was enforced starting on or about December 15, 1998. However, Plaintiffs argue that they have exhausted their state remedies or that exhaustion of state remedies is futile based on events occurring in prior state court cases which challenged the County's regulation of vacation rentals.

In 1994 and 1996, certain Monroe County property owners, who are purportedly members of the Plaintiff class in the action at hand, brought suits against Monroe County regarding the County's regulation of vacation rentals. These actions were brought prior to the enactment of Ordinance 004–1997. In *Romanoff v. Monroe County*, Case No. 94–1306–CA–18 (Fla. 16th Jud. Cir.), certain property owners

sought a declaratory judgment as to the validity of vacation rentals.[1] The parties did not assert any inverse condemnation claims against the County although the Plaintiffs assert that the property owners had viable claims. The *Romanoff* case was later dismissed as moot without an adjudication on the merits. No appeal was taken to the Florida Third District Court of Appeals.

In *Drossel v. Monroe County*, Case No. 96–520–CA–1 (Fla. 16th Jud. Cir.), certain property owners brought suit against the county seeking a declaratory judgment action and inverse condemnation action based on an alleged regulatory ban on vacation rentals. The *Drossel* action was also dismissed before an adjudication on the merits. *Drossel* was not appealed to the Florida Third District Court of Appeals.[2]

Although some members of the Plaintiff class may have been plaintiffs in the *Drossel* and *Romanoff* cases, Plaintiffs argument that those actions satisfy the exhaustion requirement of *Williamson* is unavailing. First, Ordinance 004–1997 was not challenged in either *Drossel* or *Romanoff.* Thus, there has been no attempt in state court to seek just compensation based upon the premature enforcement of Ordinance 004–1997. In addition, even if this Court did consider the *Drossel* or *Romanoff* cases to be an adequate challenge to the regulation of vacation rentals, the plaintiffs in *Drossel* and *Romanoff* did not exhaust their state remedies seeking just compensation in those cases. Although the Plaintiffs acknowledge that the

*Drossel* and *Romanoff* plaintiffs could have appealed those dismissals to the Third District Court of Appeals, no appeals were taken. Accordingly, state remedies were never exhausted in *Drossel* and *Romanoff,* and these two matters cannot satisfy the ripeness requirement of *Williamson.*

Plaintiffs also argue that the Defendant's conduct in *Drossel* and *Romanoff* shows that seeking state court remedies in the instant matter would be futile. Plaintiffs specifically argue that the Defendant "clearly interfered with the judicial process" by acting in a manner which caused the *Drossel* and *Romanoff* cases to become moot and to be dismissed. Plaintiffs aver that such "blatant judicial interference with court access" shows that pursuing a state court action would be futile. Plaintiffs also argue that the trial court's interpretation of the law would make a state court action futile. Despite these contentions that Defendant engaged in misconduct during the trial court proceedings in *Drossel* and *Romanoff* and that the trial court judge erroneously interpreted the law in those matters, those plaintiffs never pursued an appeal to the Third District Court of Appeals. However, since those plaintiffs did not avail themselves of appeals, Plaintiffs argument that seeking a state remedy in this action is purely speculative. Accordingly, this Court finds that there is no evidence that the pursuit of a state court remedy in the pending action would be futile.

Since there has been no showing that Plaintiffs sought just compensation in state

---

1. Plaintiffs acknowledge in their Response that the *Romanoff* plaintiffs had an arguable injury at the time *Romanoff* was brought, but made a tactical choice not to pursue the inverse condemnation claim at that time.

2. Plaintiffs stipulated that the *Drossel* plaintiff could have sought damages, but did not. *See* Tr. of Hearing held on Apr. 12, 2001, at 138–39.

court as afforded by state law and that there is nothing precluding Plaintiffs from seeking such remedy or that seeking such remedy in state court would be futile, this Court finds that Plaintiff's takings claims are not ripe for review in this federal proceeding.[3] Accordingly, Counts VI, VII, VIII, and IX should be dismissed. *See Reahard*, 30 F.3d at 1417 (citing *Executive 100, Inc., v. Martin County*, 922 F.2d 1536, 1540 (11th Cir.), *cert. denied*, 502 U.S. 810, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991)) (affirming dismissal of due process takings claim and just compensation claim).

## B. *Declaratory Judgment—Counts I and V*

Both parties seek summary judgment as to Count I which alleges that the Defendant prematurely enforced Ordinance 004–1997. The Declaratory Judgment Act au-

---

**3.** Plaintiffs point to an Eleventh Circuit decision cited by the District Court in a prior order denying a motion to dismiss filed by Monroe County. In *Agripost, Inc., v. Miami–Dade County*, 195 F.3d 1225 (1999), the Eleventh Circuit commented on "what a property owner must *allege* in order to state a claim that a local entity has effected a regulatory taking of his property without just compensation in violation of the Fifth Amendment." *Id.* at 1231 (emphasis added).

The *Agripost* court stated in relevant part as follows:
> the property owner must allege either that the *state law provides him no process for obtaining just compensation* (such as an action for inverse condemnation) *or that the state law appears to provide such process, but due to state court interpretation, the process is inadequate.* [footnote omitted] If the property owner makes either allegation, then his Fifth Amendment takings claim is ripe. If, on the other hand, he makes neither allegation (and cannot do so because the state law affords an adequate process for obtaining just compensation), his Fifth Amendment takings claim is not ripe. If such a claim is pending in federal district court, the district court must dismiss it for lack of subject matter jurisdiction since the owner has failed to establish an Article III "case or controversy." [citation omitted]

*Id.* (emphasis added). Furthermore a footnote in *Agripost* states that "a state law—adequate of its face—could provide an inadequate remedy because of a state court's (the trial court's *and/or* the appellate court's) interpretation ..." *Id.* at 1231 n. 13 (emphasis added).

Plaintiffs quote and highlight that portion of *Agripost* stating that "[i]f the property owner makes either allegation [no state remedy or inadequate remedy], then his Fifth Amendment takings claim is *ripe.*" *Id.* at 1231 (emphasis added). However, this statement was made in the context of a motion to dismiss on the pleadings rather than on summary judgment. *Agripost* contains no language which purports to overturn the ripeness rule stated in *Williamson*. In fact, the *Agripost* court acknowledged the *Williamson* rule by citing to *Reahard v. Lee County*, 30 F.3d 1412, 1417 (11th Cir.1994), stating "[a]s a practical matter, *Williamson* precludes litigation of the merits of a just compensation claim in federal court unless the state declines to provide adequate procedure through which an aggrieved party might seek compensation." *Id.* Accordingly, this Court finds that the mere allegation of the exhaustion or state remedies or the futility of seeking a state remedy is inadequate to establish ripeness on this motion for summary judgment. *See also Neumont v. Monroe County*, 104 F.Supp.2d 1368, 1372 (S.D.Fla. 2000).

In addition, Plaintiffs aver that a mere adverse ruling by a trial court shows that a state court remedy is inadequate. Plaintiffs point to the "and/or" language stated in the footnote 13. Under Plaintiffs' construction of the language, a property owner would no longer have to avail itself of an appeal (which is an available remedy to an adverse trial court decision). Such a construction is, however, contrary to the Supreme Court's ruling in *Williamson* requiring a party to fully exhaust state remedies. It should also be noted that the language in footnote 13 is dicta and not controlling. Under these circumstances, this Court finds Plaintiffs argument that an adverse trial court decision is sufficient to show that a state provides no adequate remedy is unavailing.

thorizes a district court to grant declaratory relief, but such a determination is discretionary. *See* 28 U.S.C. § 2201(1) (court "*may* declare the rights and other legal relations of any interested party seeking such declaration whether or not further relief is or could be sought") (emphasis added); *Magnolia Marine Transport Co., Inc., v. Laplace Towing Corp.*, 964 F.2d 1571, 1581 (5th Cir.1992) ("district court's decision to grant declaratory relief is discretionary"). Furthermore, a "district court should consider denying declaratory relief to avoid '[g]ratuitous interference with the orderly and comprehensive disposition of state court litigation' if 'the claims of all parties ... can satisfactorily be adjudicated in [the state court] proceeding.'" *Magnolia Marine*, 964 F.2d at 1581 (quoting *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942)).

Since this Court finds that the Plaintiffs takings claims are unripe, Plaintiffs must seek resolution of the takings claims in state court. Plaintiffs therefore have an adequate vehicle for adjudicating the claims in Counts I and V since the declaratory judgment actions are intertwined with the takings claims.[4] Accordingly, the Court should decline to accept jurisdiction over the declaratory judgment counts as to Counts I (premature enforcement) and Count V (due process claim) to avoid duplicative and piecemeal litigation. *See Trail Enterprises, Inc., v. City of Houston*, 907 F.Supp. 250, 252 (S.D.Tex.1995).

### C. *Abstention*

Under the *Pullman* abstention doctrine, "a federal district court is vested with the

discretion to decline to exercise or postpone the exercise of jurisdiction in deference to state court resolution of underlying issues of state law." *Rindley v. Gallagher*, 929 F.2d 1552, 1554 (11th Cir.1991) (quoting *Harman v. Forssenius*, 380 U.S. 528, 534, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965)). Two criteria must be present to apply *Pullman*: the case presents an unsettled question of state law, and the question of state law is dispositive of the case or would avoid, or substantially modify the constitutional questions presented. *See id.* The purpose of Pullman abstention is to "avoid unnecessary friction in federal-state functions, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication." *Harman v. Forssenius*, 380 U.S. 528, 534, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965).

#### 1. *Counts X, XI, XII, XIII*

Count X seeks a declaratory judgment as to whether Ordinance 004–1997 was enacted in violation of the notice requirements of § 125.66 of the Florida Statutes. Plaintiffs argue that Defendant did not comply with § 125.66 because it failed to properly notice public hearings and because the Defendant made material changes to the proposed ordinance without renewing the enactment process. Plaintiff alleges that the Board of County Commissioners made last second textual changes to the proposed ordinance before the public hearing was held and that the property owners were not given adequate notice of such regulatory scheme.

Section 125.66(4) states in relevant part as follows:

Hearing held on Apr. 12, 2001, at 107. Such controversy over the construction of state law also supports abstention of the declaratory judgment counts in this matter.

**4.** It should also be noted that after a break during the hearing on the motions in this matter, Defendant propounded a new argument that was not raised in any prior briefs as to the construction of Florida. *See* Tr. of

Ordinances ... that change the actual list of permitted, conditional, or prohibited uses within a zoning category ... shall be enacted pursuant to [a certain] procedure [which includes] ... public notice ....

§ 125.66(4), Fla. Stat. (West 2001).

Plaintiff's argument relies on a 1982 Attorney General Opinion which states in relevant part as follows:

in the event that the county makes 'any substantial or material changes or amendments' during the enactment process, the enactment process 'must begin anew' with full compliance with the procedural requirements of the statute.

Op. Atty. Gen.82–93 (1982). Despite this advisory opinion by the Attorney General,[5] the issue of whether a textual change to an ordinance is a "substantial and material change" requiring the enactment process to begin anew has not been decided by any Florida court.[6]

Since the issue regarding whether the Defendant complied with state law is unsettled and since the Plaintiffs have an adequate forum to litigate this issue, this Court finds that it should abstain from ruling on Count X pending resolution of the state proceedings. Accordingly, Plaintiffs' Motion for Partial Summary Judgment as to Count X should be denied.

Count XI (taking without due process), Count XII (§ 1983 claim), and Count XIII (other damages), seek damages which are predicated upon Defendant's alleged violation of § 125.66. Since the resolution of the unsettled state issue regarding § 125.66 in Count X could moot or substantially modify the issues in Counts XI, XII, and XIII, it is also appropriate to abstain as to these counts.

### 2. *Counts II, III, IV*

Count II (temporary taking), Count III (§ 1983), and Count IV (damages resulting from premature enforcement), seek damages based on the alleged premature enforcement of Ordinance 004–1997 alleged in Count I. Since this Court has found that the appropriate forum for the resolution of Count I is in state court, these claims may become moot upon disposition of the same. Accordingly, this Court should abstain as to Counts II, III and IV. *See also Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (federal court may stay, but not dismiss, an action pending before it when there is a concurrent separate action pending in state court that raises the same or substantially the same issues).

### *RECOMMENDATION*

For the foregoing reasons, this Court RECOMMENDS as follows:

(1) Defendant's Motion for Partial Summary Judgment (DE 124) as to Counts II, V, VI, VII, VIII, IX, should be GRANTED IN PART. Counts VI, VII, VIII, and IX, should be DISMISSED AS UNRIPE.

(2) Both Plaintiffs' Motion for Partial Summary Judgment as to Count I (DE 94) and Defendant's Cross–Motion for Summary Judgment on Count I (DE 99) should be DENIED. However, the Court should *sua sponte* ex-

---

**5.** Attorney ·General Opinions are not binding on any state court. *See State v. Family Bank of Hallandale,* 623 So.2d 474 (Fla.1993).

**6.** In fact, during the hearing on this matter,

ercise its discretion under the Declaratory Judgment Act to DISMISS Counts I and V.

(3) Plaintiffs' Motion for Partial Summary Judgment as to Count X should be DENIED.

(4) The Court should *sua sponte* ABSTAIN from the remaining counts: Counts II, III, IV, X, XI, XII, and XIII, and STAY this matter pending resolution of the state court proceedings.

Any party may serve and file written objections to this Report and Recommendation with the Honorable James C. Paine, within ten (10) days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(C). Failure to file timely objections may limit the scope of appellate review of factual findings contained herein. *See United States v. Warren*, 687 F.2d 347, 348 (11th Cir.1982) *cert. denied*, 460 U.S. 1087, 103 S.Ct. 1781, 76 L.Ed.2d 351 (1983).

May 17, 2001.

### AMENDED OMNIBUS REPORT AND RECOMMENDATION

THIS CAUSE was initially before this Court on Order of Reference (DE 152) from United States District Judge James C. Paine referring to this Court "all pretrial motions, including all motions presently pending, ... to take all necessary and proper action as required by law and/or to submit a report and recommendation to [the District] Court." On May 18, 2001, this Court entered an Omnibus Report and Recommendation (DE 232) addressing the following: Defendant's Motion for Partial Summary Judgment as to Counts II, V, VI, VII, VIII, and IX (DE 124); Plaintiffs' Motion for Partial Summary Judgment as to Count I (DE 94); Defendant's Cross–Motion for Summary Judgment as to Count I (DE 99); Plaintiffs' Motion for Partial Summary Judgment as to Count X (DE 171); and the Court's *sua sponte* consideration of whether abstention doctrine applies.[1]

On July 23, 2001, the District Court entered an Order Remanding Motions for Partial Summary Judgment to Magistrate Judge Ann E. Vitunac for Recommended Findings of Fact (DE 245) directing this Court to supplement its Report and Recommendation with "Findings of Fact." Accordingly, this Court hereby amends its Omnibus Report and Recommendation (DE 232) to comply with the District Court's directive.

### FINDINGS OF FACT

1. In 1994 and 1996, certain Monroe County property owners, who are purportedly members of the Plaintiff class in the action at hand, brought suits[2] against Monroe County regarding the County's regulation of vacation rentals. These actions were brought prior to the enactment of Monroe County Ordinance No. 004–1997.

2. In *Romanoff v. Monroe County*, Case No. 94–1306–CA–18 (Fla. 16th Jud.

---

1. Courts may apply abstention doctrine *sua sponte* even if no party has urged the court to apply such doctrine. *See BT Inv. Managers, Inc. v. Lewis*, 559 F.2d 950, 954 n. 16 (5th Cir.1977); *Front Royal and Warren County Industrial Park Corp. v. Town of Front Royal*, 945 F.2d 760, 763 (4th Cir.1991).

2. *Romanoff v. Monroe County*, Case No. 94–1306–CA–18 (Fla. 16th Jud. Cir.) and *Drossel v. Monroe County*, Case No. 96–520–CA–1 (Fla. 16th Jud. Cir.).

Cir.), certain property owners sought a declaratory judgment as to the validity of vacation rentals.[3] The parties did not assert any inverse condemnation claims against the County although the Plaintiffs assert that the property owners had viable claims. The *Romanoff* case was later dismissed as moot without an adjudication on the merits. No appeal was taken to the Florida Third District Court of Appeal.

3. In *Drossel v. Monroe County*, Case No. 96–520–CA–1 (Fla. 16th Jud. Cir.), certain property owners brought suit against the county seeking a declaratory judgment action and inverse condemnation action based on an alleged regulatory ban on vacation rentals. The *Drossel* action was also dismissed before an adjudication on the merits. *Drossel* was not appealed to the Florida Third District Court of Appeal.[4]

4. Monroe County Ordinance 004–1997 (the "Ordinance") was adopted by the Monroe County Board of County Commissioners on February 3, 1997. The Ordinance placed restrictions on certain owners' use of their properties as vacation rentals. On or about December 15, 1998, Monroe County began enforcing Ordinance 004–1997. On February 26, 1999, the Monroe County Code Enforcement Board issued its first citation to Diane Schaffer for violating the Ordinance. Prior to February 26, 1999, the Code Enforcement Board did not issue any citations. This action was subsequently brought to challenge the Ordinance.

5. Plaintiffs have not brought any action in state court seeking just compensation for the alleged regulatory taking resulting from the enactment of Monroe County Ordinance No. 004–1997.

6. On May 21, 1999, Plaintiffs filed their Complaint (DE 1) challenging the validity and constitutionality of that Monroe County Ordinance No. 004–1997, which prohibits vacation rentals for periods of fewer than 28 days in certain unincorporated areas of Monroe County. In the Complaint, Plaintiffs alleged, *inter alia*, that they had "exhausted their state administrative remedies" because Class Members had challenged the ban on short term vacation rentals in Florida State Courts in the *Romanoff* and *Drossel* litigation.

7. On November 2, 1999, the District Court dismissed the Plaintiffs' Initial Complaint (DE 1) without prejudice and granted Plaintiffs leave to amend based upon the ruling of the Third District Court of Appeal in *Rathkamp v. Department of Community Affairs*, 740 So.2d 1209 (Fla. 3d DCA 1999). (*See* Order Granting Defendant's Motion to Dismiss (DE 62)).[5]

---

**3.** Plaintiffs acknowledge in their Response that the *Romanoff* plaintiffs had an arguable injury at the time *Romanoff* was brought, but made a tactical choice not to pursue the inverse condemnation claim at that time.

**4.** Plaintiffs stipulated that the *Drossel* plaintiff could have sought damages, but did not. *See* Tr. of Hearing held on Apr. 12, 2001, at 138–39.

**5.** In *Rathkamp*, the Third District Court of Appeal affirmed the final order of the Florida Department of Community Affairs, which held that Monroe County Ordinance No. 004–1997 is valid under Florida law and consistent with the Principles of Guiding Development for the Florida Keys area of critical state concern, as required by Fla. Stat. § 380.04. The Third District further held that Fla. Stat. § 380.0552(7) does not constitute an unconstitutional delegation of legislative authority to the Florida Department of Community Affairs under the Florida Constitution. On March 16, 2000, the Florida Supreme Court denied the *Rathkamp* plaintiffs' petition for certiorari.

8. On November 26, 1999, Plaintiffs timely filed an Amended Complaint (DE 63) pursuant to the District Court's Order Granting Defendant's Motion to Dismiss (DE 62). The Amended Complaint eliminated those factual allegations that pertained solely to issues already resolved in *Rathkamp.*

9. On December 6, 1999, Defendant Monroe County filed a Motion to Dismiss Amended Complaint (DE 64) arguing, *inter alia,* that the Court lacked subject matter jurisdiction because Plaintiffs' claims were unripe because Plaintiffs failed to exhaust their state court remedies.

10. On June 21, 2000, the District Court entered an Order Denying Defendant's Motion to Dismiss Amended Complaint. *See Neumont v. Monroe County Fla.,* 104 F.Supp.2d 1368 (S.D.Fla.2000). In that Order the District Court found, *inter alia,* that Plaintiffs "have met their pleading requirements for establishing that their claims were ripe for judicial review" by alleging in the Amended Complaint that they had "exhausted their state court remedies and have not received just compensation." *Id.* at 1371–72. The Court specifically pointed to ¶ 68 of the Amended Complaint in which "Plaintiffs alleged that they have exhausted their administrative remedies, 'or alternatively, exhaustion is futile because the County has acted in such manner as to obstruct the Class from pursuing its state law remedies ...'" *Id.* at 1371 (quoting Amended Complaint (DE 63) at 18.) Although the District Court found that Plaintiffs' Amended Complaint would survive a facial attack as to the issue of ripeness, the Court made no factual findings as to ripeness. *See id.* ("Plaintiffs have met their *pleading requirements* for establishing that their claims were ripe for judicial review") (emphasis added).[6]

11. On October 19, 2000, Defendant filed a Motion for Partial Summary Judgment (DE 124). In this motion the Defendants factually challenged the Court's subject matter jurisdiction arguing that Plaintiffs had failed to exhaust their state court remedies over the inverse condemnation claims. On November 11, 2000, Plaintiffs filed a Rule 56(f) Motion (DE

---

6. "Attacks on subject matter jurisdiction come in two forms: (1) facial attacks, and (2) factual attacks." *Scarfo v. Ginsberg,* 175 F.3d 957, 960 (11th Cir.1999). "Facial attacks on a complaint 'require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [plaintiff's] complaint are taken as true for the purposes of the motion.'" *Id.* at 960(quoting *See Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir.1990)). However, factual attacks challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* at 960 (11th Cir.1999) (quoting *Lawrence,* 919 F.2d at 1529).

In a factual attack of subject matter jurisdiction, the presumption of truthfulness afforded a plaintiff under Federal Rule of Civil Procedure 12(b)(6) does not attach, and the court is free to weigh the evidence. *See id.* at 960–61. On this issue, the Eleventh Circuit has stated that:

[in a factual attack upon subject matter jurisdiction] the trial court may proceed as it never could under 12(b)(6) or Fed. R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—it's very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Id.*

131) arguing that they needed additional time to engage in discovery as to the takings ripeness issue to provide appropriate opposition to Defendant's motion. On January 5, 2001, this Court granted Plaintiffs' request (DE 154) and gave the Plaintiffs until February 5, 2001, to conduct additional discovery to afford Plaintiffs a full and fair opportunity to oppose Defendant's motion.

12. On December 6, 2000, Plaintiff filed a Second Amended Complaint (DE 143) ("Complaint") which included the following thirteen counts:

Count I: Declaratory Judgment as to whether Ordinance 004–1997 was prematurely enforced during the time period of December 15, 1998 (11 days after the Department entered its Final Order), and March 16, 2000 (when the Florida Supreme Court denied review). (Complaint at 21.)

Count II: Compensation for Temporary Taking resulting from premature enforcement of Ordinance 004–1997 during the time period of December 15, 1998, and March 16, 2000. (Complaint at 23.)

Count III: Violation of Civil Rights [42 U.S.C. § 1983] under color of state law as a result of the premature enforcement of Ordinance 004–1997 during the time period of December 15, 1998, and March 16, 2000. (Complaint at 25.)

Count IV: Other damages resulting from the premature enforcement of Ordinance 004–1997 during the time period of December 15, 1998, and March 16, 2000. (Complaint at 28.)

Count V: Declaratory Judgment as to the existence of a compensable taking by the enactment of Ordinance 004–1997. (Complaint at 29.)

Count VI: Inverse Condemnation based upon a facial violation of the Fifth Amendment. (Complaint at 31.)

Count VII: Inverse Condemnation based upon as-applied violation of the Fifth Amendment. (Complaint at 33.)

Count VIII: Inverse Condemnation based upon facial violation of Art. X, § 6(a), of the Florida Constitution. (Complaint at 35.)

Count IX: Inverse Condemnation based upon as-applied violation of Art. X, § 6(a), of the Florida Constitution. (Complaint at 36.)

Count X: Declaratory Judgment as to whether Ordinance 004–1997 is void ab initio because enacted in violation of § 125.66, Florida Statutes. (Complaint at 37.)

Count XI: Compensation for Taking of private property without Due Process of Law. (Complaint at 39.)

Count XII: Violation of Civil Rights [42 U.S.C. § 1983] under color of state law as a result of violation of § 125.66, Florida Statutes. (Complaint at 41.)

Count XIII: Other damages resulting from the wrongful enactment of Ordinance 004–1997. (Complaint at 43.)

## DISCUSSION

### A. Ripeness—Counts VI, VII, VIII, IX

The United State Supreme Court has held that a takings claim in violation of the Fifth Amendment is not ripe until the party "seek[s] compensation through the procedures the State has provided for doing so." *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172, 194, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). In

*Williamson,* the Court noted that "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Id.* The Court further stated that "[i]f the government has provided an adequate process for obtaining compensation, and if resort to that process 'yield[s] just compensation,' then the property owner 'has no claim against the Government' for a taking." *Id.* at 194–95, 105 S.Ct. 3108 (quoting *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1013, 1018, n. 21, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984)). Thus, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.* at 195, 105 S.Ct. 3108. According to *Williamson* a "State's action is not 'complete' in the sense of causing a constitutional injury 'unless or until the State fails to provide an adequate post deprivation remedy for the property loss.'" *Id.* (quoting *Hudson v. Palmer,* 468 U.S. 517, 532 n. 12, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)).

Under Florida law, a property owner may bring an inverse condemnation action in state court to obtain just compensation for an alleged regulatory taking of property. *See Joint Ventures, Inc. v. Department of Transp.,* 563 So.2d 622, 627 (Fla. 1990) (inverse condemnation affords the affected property owner an after-the-fact remedy, when there has already been a taking by regulation); Art. X, § 6, Fla. Const. (forbidding the taking of private property without full compensation); *see also First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S.

304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987) (Supreme Court recognized that the Fifth Amendment's Just Compensation Clause requires states to provide compensation for temporary regulatory takings). Thus, Plaintiffs had an available state remedy for their inverse condemnations claim when they filed this action in federal court in 1999.

In the case at hand, Plaintiffs have not sought just compensation in State court for the alleged temporary taking resulting from the alleged premature enforcement of Ordinance 004–1997 which was adopted in 1997 and was enforced starting on or about December 15, 1998. However, Plaintiffs argue that they have exhausted their state remedies or that exhaustion of state remedies is futile based on events occurring in prior state court cases which challenged the County's regulation of vacation rentals.

In 1994 and 1996, certain Monroe County property owners, who are purportedly members of the Plaintiff class in the action at hand, brought suits against Monroe County regarding the County's regulation of vacation rentals. These actions were brought prior to the enactment of Ordinance 004–1997. In *Romanoff v. Monroe County,* Case No. 94–1306–CA–18 (Fla. 16th Jud. Cir.), certain property owners sought a declaratory judgment as to the validity of vacation rentals.[7] The parties did not assert any inverse condemnation claims against the County although the Plaintiffs assert that the property owners had viable claims. The *Romanoff* case was later dismissed as moot without an adjudication on the merits. No appeal was taken to the Florida Third District Court of Appeals.

---

7. Plaintiffs acknowledge in their Response that the *Romanoff* plaintiffs had an arguable injury at the time *Romanoff* was brought, but made a tactical choice not to pursue the inverse condemnation claim at that time.

In *Drossel v. Monroe County*, Case No. 96–520–CA–1 (Fla. 16th Jud. Cir.), certain property owners brought suit against the county seeking a declaratory judgment action and inverse condemnation action based on an alleged regulatory ban on vacation rentals. The *Drossel* action was also dismissed before an adjudication on the merits. *Drossel* was not appealed to the Florida Third District Court of Appeal.[8]

Although some members of the Plaintiff class may have been plaintiffs in the *Drossel* and *Romanoff* cases, Plaintiffs argument that those actions satisfy the exhaustion requirement of *Williamson* is unavailing. First, Ordinance 004–1997 was not challenged in either *Drossel* or *Romanoff*. Thus, there has been no attempt in state court to seek just compensation based upon the premature enforcement of Ordinance 004–1997. In addition, even if this Court did consider the *Drossel* or *Romanoff* cases to be an adequate challenge to the regulation of vacation rentals, the plaintiffs in *Drossel* and *Romanoff* did not exhaust their state remedies seeking just compensation in those cases. Although the Plaintiffs acknowledge that the *Drossel* and *Romanoff* plaintiffs could have appealed those dismissals to the Third District Court of Appeals, no appeals were taken. Accordingly, state remedies were never exhausted in *Drossel* and *Romanoff*, and these two matters cannot satisfy the ripeness requirement of *Williamson*.

Plaintiffs also argue that the Defendant's conduct in *Drossel* and *Romanoff* shows that seeking state court remedies in the instant matter would be futile. Plaintiffs specifically argue that the Defendant "clearly interfered with the judicial process" by acting in a manner which caused the *Drossel* and *Romanoff* cases to become moot and to be dismissed. Plaintiffs aver that such "blatant judicial interference with court access" shows that pursuing a state court action would be futile. Plaintiffs also argue that the trial court's interpretation of the law would make a state court action futile. Despite these contentions that Defendant engaged in misconduct during the trial court proceedings in *Drossel* and *Romanoff* and that the trial court judge erroneously interpreted the law in those matters, those plaintiffs never pursued an appeal to the Third District Court of Appeal. However, since those plaintiffs did not avail themselves of appeals, Plaintiffs argument that seeking a state remedy in this action would be futile is purely speculative. Accordingly, this Court finds that there is no evidence that the pursuit of a state court remedy in the pending action would be futile.

Since there has been no showing that Plaintiffs sought just compensation in state court as afforded by state law and that there is nothing precluding Plaintiffs from seeking such remedy or that seeking such remedy in state court would be futile, this Court finds that Plaintiffs' takings claims are not ripe for review in this federal proceeding.[9] Accordingly, Counts VI, VII, VIII, and IX should be dismissed. *See Reahard*, 30 F.3d at 1417 (citing *Executive*

---

8. Plaintiffs stipulated that the *Drossel* plaintiff could have sought damages, but did not. *See* Tr. of Hearing held on Apr. 12, 2001, at 138–39.

9. Plaintiffs point to an Eleventh Circuit decision cited by the District Court in a prior

order denying a motion to dismiss filed by Monroe County. In *Agripost, Inc., v. Miami–Dade County*, 195 F.3d 1225 (1999), the Eleventh Circuit commented on "what a property owner must *allege* in order to state a claim that a local entity has effected a regulatory taking of his property without just compensa-

*100, Inc., v. Martin County,* 922 F.2d 1536, 1540 (11th Cir.), *cert. denied,* 502 U.S. 810, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991)) (affirming dismissal of due process takings claim and just compensation claim).

## B. Declaratory Judgment—Counts I and V

Both parties seek summary judgment as to Count I which alleges that the Defendant prematurely enforced Ordinance 004–1997. The Declaratory Judgment Act authorizes a district court to grant declaratory relief, but such a determination is discretionary. *See* 28 U.S.C. § 2201(1) (court *"may* declare the rights and other legal relations of any interested party seeking such declaration whether or not further relief is or could be sought") (emphasis added); *Magnolia Marine Transport Co., Inc., v. Laplace Towing Corp.,* 964 F.2d 1571, 1581 (5th Cir.1992) ("district court's decision to grant declaratory relief is discretionary"). Furthermore, a "district court should consider denying declaratory relief to avoid '[g]ratuitous interference with the orderly and comprehensive disposition of state court litigation' if 'the claims of all parties ... can satisfactorily be adju-

tion in violation of the Fifth Amendment." *Id.* at 1231 (emphasis added).

The *Agripost* court stated in relevant part as follows:

the property owner must allege either that the *state law provides him no process for obtaining just compensation* (such as an action for inverse condemnation) *or that the state law appears to provide such process, but due to state court interpretation, the process is inadequate.* [footnote omitted] If the property owner makes either allegation, then his Fifth Amendment takings claim is ripe. If, on the other hand, he makes neither allegation (and cannot do so because the state law affords an adequate process for obtaining just compensation), his Fifth Amendment takings claim is not ripe. If such a claim is pending in federal district court, the district court must dismiss it for lack of subject matter jurisdiction since the owner has failed to establish an Article III "case or controversy." [citation omitted]

*Id.* (emphasis added). Furthermore a footnote in *Agripost* states that "a state law—adequate of its face—could provide an inadequate remedy because of a state court's (the trial court's *and/or* the appellate court's) interpretation ..." *Id.* at 1231 n. 13 (emphasis added).

Plaintiffs quote and highlight that portion of *Agripost* stating that "[i]f the property owner makes either allegation [no state remedy or inadequate remedy], then his Fifth Amendment takings claim is *ripe.*" *Id.* at 1231 (emphasis added). However, this statement was made in the context of a motion to dismiss on the pleadings rather than on summary judgment. *Agripost* contains no language which purports to overturn the ripeness rule stated in *Williamson.* In fact, the *Agripost* court acknowledged the *Williamson* rule by citing to *Reahard v. Lee County,* 30 F.3d 1412, 1417 (11th Cir.1994), stating "[a]s a practical matter, *Williamson* precludes litigation of the merits of a just compensation claim in federal court unless the state declines to provide adequate procedure through which an aggrieved party might seek compensation." *Id.* Accordingly, this Court finds that the mere allegation of the exhaustion of state remedies or the futility of seeking a state remedy is inadequate to establish ripeness on this motion for summary judgment. *See also Neumont v. Monroe County,* 104 F.Supp.2d 1368, 1372 (S.D.Fla. 2000).

In addition, Plaintiffs aver that a mere adverse ruling by a trial court shows that a state court remedy is inadequate. Plaintiffs point to the "and/or" language stated in footnote 13. Under Plaintiffs' construction of the language, a property owner would no longer have to avail itself of an appeal (which is an available remedy to an adverse trial court decision). Such a construction is, however, contrary to the Supreme Court's ruling in *Williamson* requiring a party to fully exhaust state remedies. It should also be noted that the language in footnote 13 is dicta and not controlling. Under these circumstances, this Court finds Plaintiffs argument that an adverse trial court decision is sufficient to show that a state provides no adequate remedy is unavailing.

dicated in [the state court] proceeding.'" *Magnolia Marine,* 964 F.2d at 1581 (quoting *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942)).

Since this Court finds that the Plaintiffs takings claims are unripe, Plaintiffs must seek resolution of the takings claims in state court. Plaintiffs therefore have an adequate vehicle for adjudicating the claims in Counts I and V since the declaratory judgment actions are intertwined with the takings claims.[10] Accordingly, the Court should decline to accept jurisdiction over the declaratory judgment counts as to Counts I (premature enforcement) and Count V (due process claim) to avoid duplicative and piecemeal litigation. *See Trail Enterprises, Inc., v. City of Houston,* 907 F.Supp. 250, 252 (S.D.Tex.1995).

### C. *Abstention*

Under the *Pullman* abstention doctrine, "a federal district court is vested with the discretion to decline to exercise or postpone the exercise of jurisdiction in deference to state court resolution of underlying issues of state law." *Rindley v. Gallagher,* 929 F.2d 1552, 1554 (11th Cir.1991) (quoting *Harman v. Forssenius,* 380 U.S. 528, 534, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965)). Two criteria must be present to apply *Pullman:* the case presents an unsettled question of state law, and the question of state law is dispositive of the case or would avoid, or substantially modify, the constitutional questions presented. *See id.* The purpose of *Pullman* abstention is to "avoid unnecessary friction in federal-state func-

tions, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication." *Harman v. Forssenius,* 380 U.S. 528, 534, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965).

### 1. *Counts X, XI, XII, XIII*

Count X seeks a declaratory judgment as to whether Ordinance 004–1997 was enacted in violation of the notice requirements of § 125.66 of the Florida Statutes. Plaintiffs argue that Defendant did not comply with § 125.66 because it failed to properly notice public hearings and because the Defendant made material changes to the proposed ordinance without renewing the enactment process. Plaintiff alleges that the Board of County Commissioners made last second textual changes to the proposed ordinance before the public hearing was held and that the property owners were not given adequate notice of such regulatory scheme. Although Plaintiffs admit that there is no state court case law on point which would resolve this issue, Plaintiffs argue that state law is not "unsettled."

Section 125.66(4) states in relevant part as follows:

> Ordinances ... that change the actual list of permitted, conditional, or prohibited uses within a zoning category ... shall be enacted pursuant to [a certain] procedure [which includes] ... public notice ....

§ 125.66(4), Fla. Stat. (West 2001).

Plaintiff's argument relies on a 1982 Attorney General Opinion which states in relevant part as follows:

---

**10.** It should also be noted that after a break during the hearing on the motions in this matter, Defendant propounded a new argument that was not raised in any prior briefs as to the construction of Florida. *See* Tr. of

Hearing held on Apr. 12, 2001, at 107. Such controversy over the construction of state law also supports abstention of the declaratory judgment counts in this matter.

in the event that the county makes 'any substantial or material changes or amendments' during the enactment process, the enactment process 'must begin anew' with full compliance with the procedural requirements of the statute.

Op. Atty. Gen.82–93 (1982). Despite this advisory opinion by the Attorney General,[11] the issue of whether a textual change to an ordinance is a "substantial and material change" requiring the enactment process to begin anew has not been decided by any Florida court. *Cf. Law and Information Services, Inc., v. City of Riviera Beach,* 670 So.2d 1014, 1016 (Fla. 4th DCA 1996) (Under the Florida Sunshine Law, Fla. Stat. § 286.011, if a government meeting is properly noticed, there is no requirement that the governmental body give notice of a potential deviation from a previously announced agenda.)

Additionally, a determination of whether a change to an ordinance constitutes a "substantial and material change" is a mixed question of law and fact which precludes disposition on summary judgment.

Since the issue regarding whether the Defendant complied with state law is unsettled and since the Plaintiffs have an adequate forum to litigate this issue, this Court finds that it should abstain from ruling on Count X pending resolution of the state proceedings. *Cf. Herald Company v. McNeal,* 553 F.2d 1125 (8th Cir.1977) (abstention is appropriate where a federal constitutional issue might be mooted or presented in a different posture by a state court determination of state law issues); *First Assemby of God of Naples Fla., Inc., v. Collier County,* 775 F.Supp. 383 (M.D.Fla.1991) (court refused to exercise pendent jurisdiction over state claims that zoning ordinances were void for failing to comply with state laws, Fla. Stat. §§ 125.66 and 125.68). Accordingly, Plaintiffs' Motion for Partial Summary Judgment as to Count X should be denied.

Count XI (taking without due process), Count XII (§ 1983 claim), and Count XIII (other damages), seek damages which are predicated upon Defendant's alleged violation of § 125.66. Since the resolution of the unsettled state issue regarding § 125.66 in Count X could moot or substantially modify the issues in Counts XI, XII, and XIII, it is also appropriate to abstain as to these counts.

### 2. *Counts II, III, IV*

Count II (temporary taking), Count III (§ 1983), and Count IV (damages resulting from premature enforcement), seek damages based on the alleged premature enforcement of Ordinance 004–1997 alleged in Count I. Since this Court has found that the appropriate forum for the resolution of Count I is in state court, these claims may become moot upon disposition of the same. Accordingly, this Court should abstain as to Counts II, III and IV.[12] *See also Colorado River Water Conservation District v.*

---

**11.** Attorney General Opinions are not binding on any state court. *See State v. Family Bank of Hallandale,* 623 So.2d 474 (Fla.1993).

**12.** It should also be noted that courts have found it prudent to abstain in matters involving land use question because such questions are the "particular concern of local and state governments, and traditionally, federal courts have not interfered with state courts in the area of land use policy." *Front Royal and Warren County Industrial Park Corp. v. Town of Front Royal,* 945 F.2d 760, 763 (4th Cir. 1991) (quoting *Browning–Ferris, Inc., v. Baltimore County,* 774 F.2d 77, 79 (4th Cir.1985)); *see also Trinity Baptist Church v. City of Asheville,* 88 F.Supp.2d 487, 492 (W.D.N.C.1999) (since the essence of plaintiffs complaint depended "upon the construction of state land use law concerning the scope and authority of

*United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (federal court may stay, but not dismiss, an action pending before it when there is a concurrent separate action pending in state court that raises the same or substantially the same issues).

## RECOMMENDATION

For the foregoing reasons, this Court RECOMMENDS as follows:

(1) Defendant's Motion for Partial Summary Judgment (DE 124) as to Counts II, V, VI, VII, VIII, IX, should be GRANTED IN PART. Counts VI, VII, VIII, and IX, should be DISMISSED AS UNRIPE.

(2) Both Plaintiffs' Motion for Partial Summary Judgment as to Count I (DE 94) and Defendant's Cross–Motion for Summary Judgment on Count I (DE 99) should be DENIED. However, the Court should *sua sponte* exercise its discretion under the Declaratory Judgment Act to DISMISS Counts I and V.

(3) Plaintiffs' Motion for Partial Summary Judgment as to Count X should be DENIED.

(4) The Court should *sua sponte* ABSTAIN from the remaining counts: Counts II, III, IV, X, XI, XII, and XIII, and STAY this matter pending resolution of the state court proceedings.

Any party may serve and file written objections to this Report and Recommendation with the Honorable James C. Paine, within ten (10) days after being served

local planning bodies and … the proper interpretation of state and local land use law and county zoning practices and procedures,"

with a copy. *See* 28 U.S.C. § 636(b)(1)(C). Failure to file timely objections may limit the scope of appellate review of factual findings contained herein. *See United States v. Warren,* 687 F.2d 347, 348 (11th Cir.1982) *cert. denied,* 460 U.S. 1087, 103 S.Ct. 1781, 76 L.Ed.2d 351 (1983).

Aug. 27, 2001.

the court found that the action did not involve a genuine and independent federal claim and abstention was appropriate.)